# JACK MEINKE AND OTHERS v.
# LeROY LEWANDOWSKI AND ANOTHER.

237 N. W. 2d 387.

December 26, 1975—No. 45447.

*Broeker, Bachman & Zerby* and *R. Walter Bachman, Jr.,* for appellants.

*Quinlivan & Williams* and *John Quinlivan,* for respondent Lewandowski.

Heard before Rogosheske, Todd, and Yetka, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

Plaintiff Anita Kruse[1] appeals from an order of the district court denying her motion for a new trial. Plaintiff was a passenger in defendant Chris Kruse's vehicle and sustained injuries when it collided with defendant LeRoy Lewandowski's vehicle. The matter was submitted by special verdict to the jury which returned inconsistent answers. The trial judge first instructed the jury to strike the damage apportionment question; then, following further inquiry from the jury, he engaged in a colloquy with the jury which resulted in the jury returning a consistent verdict for defendant Lewandowski. Plaintiff challenges the propriety of the trial judge's actions. We reverse.

Plaintiff has furnished only a partial transcript which does not include any of the evidence presented at trial. It appears,

---

[1] This opinion deals with the injured plaintiff only but she is joined in her appeal by her parents who seek consequential damages.

however, that plaintiff was a passenger in defendant Kruse's automobile. At the time Kruse was making a left turn at an uncontrolled intersection, a collision occurred with the Lewandowski vehicle which was approaching the intersection in the opposite direction. Plaintiff initiated a negligence action against defendants, and defendant Lewandowski answered alleging plaintiff was contributorily negligent.

The court instructed the jury regarding negligence and direct cause as set forth in 4 Hetland & Adamson, Minnesota Practice, Jury Instruction Guides (2 ed.) JIG II 101 G-S and 140 G-S, treating them as two separate elements and as prerequisites for the assessment of negligence to a party. The matter was submitted in a special verdict and the jury returned with an initial verdict which read in part as follows:

"QUESTION No. 1.

"Was the defendant LeRoy Lewandowski, negligent in the operation of the vehicle he was driving at the time and place of the collision?

"Answer: (yes or no) Yes

"(If your answer to question number one is yes, then answer question number two)

"QUESTION No. 2.

"Was such negligence of LeRoy Lewandowski a direct cause of the collision and the resulting damage?

"Answer: (yes or no) no

"QUESTION No. 3.

"Was the defendant Chris Kruse, negligent in the operation of the vehicle he was driving at the time and place of the collision?

"Answer: (yes or no) Yes

"(If your answer to question number three is yes, then answer question number four)

"QUESTION No. 4.

"Was such negligence of Chris Kruse a direct cause of the collision and resulting damage?

"Answer: (yes or no) Yes

"QUESTION No. 5.

"Was the plaintiff, Anita M. Kruse, guilty of negligence at the time and place of the collision?

"Answer: (yes or no) Yes

"(If your answer to question number five is yes, then answer question number six)

"QUESTION No. 6.

"Was such negligence of plaintiff, Anita M. Kruse, a direct cause of the collision and the resulting damage?

"Answer: (Yes or no) no

"QUESTION No. 7.

"Taking all of the negligence which contributed to the accident at one hundred percent, what percentage or proportion of such negligence do you attribute to

| "(a) | LeRoy Lewandowski, defendant: | 20% |
| "(b) | Chris Kruse, defendant: | 70% |
| "(c) | Anita M. Kruse, plaintiff: | 10% |
| | "total | 100%" |

Although there is some ambiguity in the wording of Question No. 7, the judge's oral instructions on how the jury should handle this question emphasized that it should only be answered if the jury first found that more than one party referred to in the preceding question was negligent *and further* that the negligence of more than one such party was the direct cause of the accident.[2]

---

[2] We observe that the issues of negligence and proximate cause need not necessarily both be submitted in every negligence case. It is incumbent upon counsel to appropriately move the court for a directed verdict upon the issue of causation where the facts clearly establish as a matter of law that if negligence exists, causation must exist. Conversely, negligence may exist as a matter of law, and the only issue for the jury to consider is causation. The automatic and often improper submission of both of these issues only tends to confuse the jury.

Despite these instructions, the jury initially returned a verdict finding that neither the negligence of plaintiff Anita Kruse nor that of defendant Lewandowski was a direct cause of the collision, but nevertheless, in response to Question No. 7, apportioned part of the negligence to those same parties.

■ Initially, we make two suggestions with respect to the form of special verdicts in comparative negligence cases, which should lessen the likelihood that a jury would return an inconsistent verdict. First, we repeat and reemphasize our recommendation in Orwick v. Belshan, 304 Minn. 338, 345, 231 N. W. 2d 90, 95 (1975): "Either as a preface to the comparative negligence question in the special verdict or in the court's instructions, *and preferably in both,* the jury should be told the previous answers or findings which make necessary an answer to the comparative negligence question." (Italics supplied.)

Secondly, we note that the same wording used in Question No. 7 here was the precise cause of the jury's confusion in Peterson v. Haule, 304 Minn. 160, 164, 230 N. W. 2d 51, 54 (1975). Written questions submitted by the jury to the judge in that case made it clear that the undefined use of the phrase "negligence which contributed", following instructions and questions directed at negligence which was a "proximate cause" or "direct cause", misled the jurors. Accordingly, the comparative negligence question in future cases should be worded strictly in terms of "proximate cause" or "direct cause."

■ In this case, the trial court, having advised the jury that its answers were inconsistent, was left in the extremely difficult position of seeking to avoid a mistrial by advising the jury to proceed to render a consistent verdict. Learned judges and legal authorities have written in great detail concerning the adoption of Rule 49(a), Federal Rules of Civil Procedure, which was subsequently adopted in Minnesota as Rule 49.01, Rules of Civil Procedure.[3] In these writings is criticism as well as defense of

---

[3] For a sampling of these writings, see Skidmore v. Baltimore & O.R. Co. 167 F. 2d 54 (2 Cir. 1948), certiorari denied, 335 U. S. 816, 69

the general verdict. Debate in Minnesota, however, is moot since our rule permits special verdicts.

Although Rule 49.01, Rules of Civil Procedure, does not specify the procedure to be followed by a trial judge when a jury returns inconsistent answers to a special verdict, a substantial body of case law in Minnesota and other jurisdictions defines the alternative courses available to the judge and the broad considerations which should guide his exercise of discretion in choosing among the alternatives and implementing his choice. Because our examination of the problems presented by inconsistent verdicts in this case and others indicates that the adoption of any specific rules would thwart the interests of justice by precluding flexibility to choose a resolution tailored to the circumstances of each case, we decline to adopt the rule urged by plaintiff —that a new trial *must* be granted in every case where a jury returns inconsistent answers.[4] Rather, we choose to restate and

---

S. Ct. 34, 93 L. ed. 371 (1948); the dissenting statement of Mr. Justice Black and Mr. Justice Douglas from the adoption of the rule, 374 U. S. 861, 867, 83 S. Ct. 13, 45, 31 F.R.D. 617, 618 (1963); 9 Wright & Miller, Federal Practice and Procedure, § 2501; Comment, 74 Yale L. J. 483; Driver, *The Special Verdict—Theory and Practice,* 26 Wash. L. Rev. 21; Guinn, *The Jury System and Special Verdicts,* 2 St. Mary's L. J. 175; 5A Moore, Federal Practice (2 ed.) p. 2201; 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 286; Note, 58 Minn. L. Rev. 903.

[4] This rule was adopted by the Wisconsin Supreme Court in Statz v. Pohl, 266 Wis. 23, 62 N. W. 2d 556, modified, 266 Wis. 32, 63 N. W. 2d 711 (1954).

In Orwick v. Belshan, 304 Minn. 338, 231 N. W. 2d 90 (1975), this court adopted *another* aspect of the Wisconsin rules regarding inconsistent answers to special verdicts as enunciated in Statz v. Pohl, *supra,* namely, if the trial court can find as a matter of law that a party is guilty of causal negligence and the jury finds that he is not, yet apportions some of the negligence to him in response to the apportionment question, then the court should change the answer to the question regarding his causal negligence.

Without a record, we are unable to determine if there is any evidence in the present case that either plaintiff's contributory negligence or defendant Lewandowski's negligence was a direct cause of the accident as a matter of law.

clarify the established general principles governing a judge's handling of inconsistent answers to special verdicts, and to evaluate the judge's action in the present case in light of those principles.

First, it has been recognized that the trial judge, when confronted with this problem, may (1) render judgment against the party having the burden of proof; (2) order a new trial; or (3) send the jury back for further deliberations. Comment, 74 Yale L. J. 483, 498. We believe the interests of justice and economy are ordinarily best served by the third alternative.

Another well-entrenched rule in Minnesota and other jurisdictions is that the trial judge has a responsibility to attempt, if at all possible, to harmonize inconsistent responses in a special verdict. Bakke v. Rainbow Club, Inc. 306 Minn. 99, 104, 235 N. W. 2d 375, 379 (1975) ; 89 C. J. S., Trial, § 562. In some cases, trial judges have done this by exercising their own powers of interpretation, e. g., Bakke v. Rainbow Club, Inc. *supra*, and in others, judges have done so by in effect partially directing a verdict, where it is deemed that a jury's response must be changed as a matter of law, e. g., Orwick v. Belshan, *supra*.

■ Where the judge chooses to send the jury back for further deliberations in order that the jury itself may eliminate inconsistencies in its initial verdict, e. g., Craigie v. Firemen's Ins. Co. 191 F. Supp. 710, 714 (D. Minn. 1961), affirmed, 298 F. 2d 457 (8 Cir. 1962), and Minnesota cases cited therein; Booth v. Spindler, 261 Minn. 79, 110 N. W. 2d 889 (1961), the judge has broad discretion to amplify and modify, as well as merely repeat, his initial instructions. Peterson v. Minneapolis Star & Tribune Co. 282 Minn. 264, 276, 164 N. W. 2d 621, 629 (1969). In exercising that discretion, however, the trial judge must take care not to interfere with the jury's role as the sole determiner of the issues presented to it. A trial judge who was confronted with inconsistent answers in a recent Minnesota case aptly phrased this constraint on his discretion to issue further instructions:

"* * * See the trouble is I don't know now just what you did mean, and I don't want to take part in the decision either. This is supposed to be your decision." Steinhaus v. Adamson, 304 Minn. 14, 19, 228 N. W. 2d 865, 869 (1975).

In the present case, there is no interpretation that can be given to the jury's responses which would reconcile the apparent inconsistencies, as was done in Bakke v. Rainbow Club, Inc. *supra.* Similarly, absent a complete record, we cannot direct that one of the answers be changed as a matter of law, as we did in Orwick v. Belshan, *supra.* Therefore, we must determine whether the trial judge exceeded his discretionary authority by reinstructing the jury and sending it back for further deliberations.

This same kind of ad hoc evaluation was applied to the trial judge's additional instructions after the jury initially returned with inconsistent answers in Peterson v. Haule, 304 Minn. 160, 230 N. W. 2d 51 (1975). We described the action of the trial judge in that case when dealing with the same inconsistency as is presented here—the jury's apportionment of negligence to parties which it had not found to be causally negligent—as an "appropriate [course] under the circumstances." 304 Minn. 175, 230 N. W. 2d 60. The judge who received the verdict[5] instructed the jury to prepare any questions they had in writing and meet with the trial judge the next morning. In light of those written questions, the trial judge restated the question relating to apportionment of negligence, which was the source of the jury's confusion, and also repeated some of his initial instruc-

---

[5] Counsel had agreed that since the trial judge had to be away that evening, another judge could receive the verdict if rendered then. However, the related practice of stipulating that the clerk receive the verdict and the jury be discharged is discouraged. Rather, we recommend that the stipulation should provide that if the jury reaches its verdict at a time the court is not available, the verdict may be sealed, and the jurors temporarily dispersed, to be reassembled before the court at any agreed-upon time.

tions. In contrast, the trial judge in the present case not only repeated and amplified his initial instruction as to when the jury should respond to the apportionment question, but, moreover, specifically directed the jury to change its response to the apportionment question.[6] In light of the jury's obvious misunderstanding of his initial instructions, the judge's assumption that a change in its response to the apportionment question rather than to the causality questions would reflect the jury's true understanding of the case was without any foundation. Therefore, he acted improperly by infringing upon the jury's factfinding function in directing that the inconsistency be eliminated through a change in one particular response.

Counsel for respondent conceded in oral argument that if nothing had occurred beyond this initial action of the trial judge, plaintiff would be entitled to a new trial. However, respondent

---

[6] The judge's precise statement to the jury at this point was as follows: "* * * Ladies, the Clerk has just read the verdict to you, and I'm going to have to ask you to make, to retire to the jury room for further action on your part. In my instructions, which I realize are hard to get under these circumstances as to the comparative negligence question, I said you are not to answer this question unless you first find that more than one person named in the question was negligent and further find that the negligence of more than one person was a direct cause of the accident.

"Now, according to this verdict, you have found Lewandowski to be negligent but not a direct cause. You have found Anita Kruse negligent but not a direct cause. Therefore, there is only one person named whose negligence was a direct cause. That is Mr. Kruse. *Therefore, question number seven should not have been answered.*

"Now, don't misunderstand me. This is a common occurrence because of the fact that this is rather complicated procedure that we have here. In other words, LeRoy Lewandowski and Anita Kruse were not negligent—were found to be negligent but not a direct cause, and therefore, the question number seven should not have been answered.

"*So I'm going to ask you to retire to the jury room and strike your answer to question number seven,* and if the Forelady will, initial the cross-out, if you will, please." (Italics supplied.)

argues that the subsequent colloquy [7] between the jurors and the court removed any defect from the proceedings. We disagree. The subsequent colloquy contains some evidence that the jury might actually have determined that there was no causal negligence on the part of two of the parties, so it might have voluntarily changed its answer to Question No. 7, even if the judge had not specifically directed it to do so. However, some statements made by jury members during this colloquy indicate that, absent such a specific direction by the judge, the jury might have preferred to change its responses to the causation questions, indicating its determination that the negligence of all three parties did causally contribute to the accident. Moreover, we conclude that the initial action of the trial judge in directing the jury to strike its answer to the comparative negligence question was improper and permeated the subsequent proceedings to such an extent that a new trial should be granted.

We cannot anticipate and formulate rules to govern the variety of problems that may confront trial judges in reinstructing juries which initially return inconsistent verdicts, but must attempt to evaluate their dispositions of the problem in light of the basic concept being advanced here, namely, that the function of the jury as the sole determiner of the facts must not be infringed upon. Our recent decision in State v. Mims, 306 Minn. 159, 235 N. W. 2d 381 (1975), is also premised on our fundamental concern that the jury exercise its factfinding function free from any influence, however unwitting or well-motivated, by the trial judge who is likely to be perceived by the jurors as an awesome and dominating figure. In that case, we prescribed an absolute rule that *any* communication between the trial judge and the jury relating to the case and occurring during the judge's uninvited entry into the jury room during the jury's de-

---

[7] Because this colloquy reveals the extent to which the judge participated in the jury's factfinding process, it is set out in full as an appendix to this opinion.

liberations and in the absence of defendant and counsel constitutes reversible error. We stated that such entrance—

"* * * offends the integrity of the proceedings and risks influencing the jury's decisional process in some degree, however difficult to define or impossible to measure. At the very least [it] disrupts the jury's deliberations, intrudes upon their independence, and transgresses the carefully drawn lines of demarcation between the functions of the trial judge and the functions of the jury." 306 Minn. 169, 235 N. W. 2d 388.[8]

While the trial judge in the instant case did not physically intrude into the jury room, his questioning of jury members, his protracted colloquy with them regarding their assessment of the evidence, and his specific directions to them as to how a particular special interrogatory should be answered constituted an equally improper intrusion upon the jury's independence in carrying out its factfinding function.

Under the circumstances involved in this case, an appropriate response by the trial court to the inconsistent verdict would have been to handle it as the judge in Peterson v. Haule, *supra,* did, i. e., to reinstruct the jury regarding direct cause and the limited circumstances under which the apportionment question should be answered. At the point when the jurors returned with their initial verdict in the present case, it is at least possible that their view of the evidence was such that they would have preferred to resolve the inconsistency in a manner which the court's further directions precluded. Therefore, under the circumstances

---

[8] See, also, State v. Martin, 297 Minn. 359, 373, 211 N. W. 2d 765, 773 (1973), in which this court proscribed the use of the so-called "Allen" charge by which trial judges urged deadlocked juries to reach a verdict, largely in an effort to minimize the potentially coercive effect upon the jury minority of "having the prestige of the court brought to bear on it."

of this case, the court's action amounted to a participation in the jury's process of deliberation and cannot be upheld.[9]

■ Having determined to reverse the trial court, we are confronted with another issue regarding the size of the verdict. The complaint alleges general and special damages for plaintiff Anita Kruse of $10,000, and the jury awarded her $15,000. Plaintiff originally filed a general new trial motion which did not indicate that the issues on retrial should be restricted in any way. However, plaintiff subsequently filed a supplemental memorandum of law which sought to "clarify" the original motion "and make it clear that a new trial is needed only on the issue of liability." The trial court did not reach this issue in its order denying the new trial motion. Therefore, in the interests of justice, we remand this case for a new trial on all issues without prejudice to the right of plaintiff to renew her motion to exclude the damages issue from the new trial.

Reversed and remanded.

## APPENDIX

"THE COURT: Yes, Ladies?

"THE FORELADY: May I ask you, Your Honor, can we change number six and two without changing number seven? See, we're confused here, because we were basing it wrong on this percentage then, see, by answering number six and two as we did.

"THE COURT: Well, you found that Mr. Lewandowski was negligent but you found that that negligence was a direct cause of the collision. That's correct, is it not?

"THE FORELADY: Yes.

"THE COURT: And you found that Anita M. Kruse was negli-

---

[9] In other circumstances, however, a trial judge may specifically instruct the jury how to respond to a particular interrogatory without unduly obtruding on the jury's factfinding function. See, Craigie v. Firemen's Ins. Co. 191 F. Supp. 710 (D. Minn. 1961), affirmed, 298 F. 2d 457 (8 Cir. 1962); Truitt v. Travelers Ins. Co. 175 F. Supp. 67 (S. D. Tex. 1959), affirmed, 280 F. 2d 784 (5 Cir. 1960).

gent but that her negligence was not a direct cause of the collision. Is that not correct?

"THE FORELADY: Yes.

"THE COURT: Then the only one whose negligence contributed to this collision was Kruse.

"THE FORELADY: But we didn't really feel that way. We felt that he was partially responsible.

"THE COURT: Who?

"THE FORELADY: We felt they were all partially responsible. That's why we have the percentages like they were.

"THE COURT: But you answered question number two—

"THE FORELADY: That's what I said.

"THE COURT: —that it was not a direct cause of the collision, and you answered question number six that her negligence was not a direct cause. Then my instructions were that you were not to answer question number seven unless you first found that more than one person named in the question was negligent and further find that the negligence of more than one person was a direct cause.

"Now, you found that three persons were negligent, but you only found one a direct cause. Therefore, you should not answer question number seven.

"THE FORELADY: I understand, Your Honor. You're saying we can't change any but number seven now. Is that what you're saying?

"THE COURT: Well, you informed me that this is what you found, and therefore, you shouldn't have answered seven at all, because there's only one person whose negligence was a direct cause of the accident. Therefore, that's a hundred percent; therefore, you don't answer it at all.

"JUROR: We don't feel he's a hundred percent.

"JUROR: May I ask a question? Well, we don't feel he's a hundred percent guilty. We felt they were an indirect cause, or can't we word it that way?

"THE COURT: Well, you have found by question number two

and question number six that neither Lewandowski or Kruse were negligent—that their negligence was not a direct cause of the accident. Therefore, there's only one direct cause of the accident.

"JUROR: I think they all contributed.

"THE COURT: But you found that they did not. There isn't much information that I can give you on the basis of what you have answered these questions, and in view of your answer to the questions number two and number six, then question number seven should not have been answered.

"JUROR: The fact that we found all three were negligent, should we have answered those other two questions differently? Is that where we made our mistake?

"THE COURT: No. That doesn't follow. I can't answer that question any way except no. If you had found that Anita Kruse's negligence was a direct cause of the accident, then you would have answered question number six 'Yes.' If you have found that LeRoy Lewandowski's negligence was a direct cause of the accident, then you would have answered question number two 'Yes.' But you have indicated by your answers no to each one of those questions, and that leaves only the negligence of Chris Kruse as a direct cause of the collision, and therefore, under the instructions that I gave you, question number seven should not have been answered.

"JUROR: Are we just establishing that we just have to have a direct cause? Because we feel they contributed a little. Aren't they negligent to a certain extent? You know, I mean—

"THE COURT: You found that they were negligent.

"JUROR: We found that they were.

"THE COURT: But you found that that negligence was not a direct cause of the collision.

"JUROR: No. Their negligence wasn't a direct cause we felt.

"THE COURT: Well, then you should not have answered number seven. Let me read this to you again.

"You are not to answer this question, number seven, unless

you first find that more than one person named in the question, that is more than one of the three, was negligent, and you found that all three were negligent, and further find that the negligence of more than one person was a direct cause of the accident.

"Now, you found that only one person's negligence was a direct cause, and that the other two were not.

"JUROR: That's the way we felt.

"THE COURT: That's the way you answered the questions. Therefore, number seven should not have been answered. So the only statement I can make to you is that number seven should not have been answered.

"JUROR: We answered the questions I felt, so I guess we shouldn't have answered number seven, isn't that right? In other words, it isn't up to us to decide percentage in a case like that.

"THE COURT: There's only one who is a direct cause and the others you don't answer.

"(At this time the jury returned to the jury room for further deliberations.)

"THE COURT: Ladies, the bailiff has handed me your verdict again, and I note therefrom that on question number seven the percentages have been stricken, and it has been initialed by the Forelady. Is that correct, Mrs. Dingmann?

"THE FORELADY: Yes.

"THE COURT: Ladies, you have heard the questions. The Clerk has read the questions and your answers thereto. Are the answers to each of the questions herein your true verdict?

"THE FORELADY: Yes.

"THE COURT: There's no dissent in that?

"THE FORELADY: No."