**QUADE & SONS REFRIGERATION, INC., et al., Respondents,**

v.

**MINNESOTA MINING & MANUFAC-TURING COMPANY, Appellant.**

No. C4–93–776.

Court of Appeals of Minnesota.

Jan. 11, 1994.

Review Denied March 15, 1994.

James T. Martin, Dan T. Ryerson, Gislason, Martin & Varpness, P.A., Edina, for respondents.

Steve Gaskins, Hal A. Shillingstad, Cosgrove, Flynn, Gaskins & O'Connor, Minneapolis, for appellant.

Considered and decided by LANSING, P.J., and FORSBERG and NORTON, JJ.

## OPINION

FORSBERG, Judge.

After Quade & Sons Refrigeration, Inc. and David Quade (Quade) won a jury verdict in this negligence action, Quade moved the trial court for preverdict interest from the date of Quade's settlement offer to the date of the verdict. Minnesota Mining & Manufacturing Company (3M) objected, arguing the interest should be calculated from the time of Quade's offer to 3M's counteroffer and only on the amount of its counteroffer. The trial court, after a hearing, disagreed and calculated the interest on the amount of the verdict from the time of the commencement of the action to the verdict date. The trial court also awarded Quade its costs and disbursements based on the affidavits and memoranda submitted. 3M appeals, arguing the trial court erred in its calculation of preverdict interest and in awarding costs and disbursements without holding an evidentiary hearing. We reverse on the preverdict interest issue but affirm the costs and disbursements award.

## FACTS

Quade owns storage facilities in Newport, Minnesota. Beginning in 1979, 3M stored some of its chemical products at Quade's facilities. In 1984, the Food and Drug Administration (F.D.A.) noticed a chemical odor in food stored in Quade's facilities and in the facilities themselves. The F.D.A. condemned the storage buildings for over a year until Quade eliminated the odor. Quade claimed 3M was responsible for the damage to food products and its lost profits due to improper storage of their chemical products. Quade offered to settle the matter for $8.5 million and held the offer open for 11 days. 3M did not accept that offer, and Quade filed suit on February 3, 1989.

On September 10, 1992, three and one-half years later and just before the jury trial was set to begin, 3M offered to settle for $50,000;

3M held that offer open for 14 days. Quade did not accept that offer.

The jury trial began on October 19, 1992 and lasted for 15 days. On November 13, the jury found both parties equally negligent and, after reduction, awarded Quade $200,180.10 in compensatory damages.

After the trial court issued its findings of fact, conclusions of law and order for judgment, Quade moved for an award of preverdict interest from the date of its offer to settle (December 19, 1988) to the date of the jury's verdict (November 13, 1992). 3M objected, arguing preverdict interest should be calculated based on its offer of $50,000 for the period from Quade's original offer to 3M's counteroffer. The trial court held neither settlement offer was valid under the offer-counteroffer exception of Minn.Stat. § 549.09, subd. 1(b) (1992), because neither offer remained open for 30 days which, the trial court found, the statute required. The trial court then calculated, under the general rule of the statute, preverdict interest from the time of the commencement of the action to the date of the verdict.

The trial court also awarded Quade's costs and disbursements based on the memoranda submitted by both parties, Quade's bill of costs and disbursements, affidavits of counsel and attached receipts. 3M objected to some of the disbursements, arguing they were either unsupported or unreasonable. During the hearing on the posttrial motions, the parties stipulated that no evidentiary hearing was needed, and that the court could consider the costs award based on the affidavits and memoranda submitted. The court awarded $19,874 of the $24,330 in costs and disbursements which Quade claimed.

## ISSUES

1. Did the trial court err in interpreting Minn.Stat. § 549.09, subd. 1(b) offer-counteroffer provision to require settlement offers to remain open for 30 days?

2. Did the trial court abuse its discretion in awarding costs and disbursements without holding an evidentiary hearing?

## ANALYSIS

1. 3M contends the trial court erred by requiring a settlement offer to remain open for 30 days in order to fall within the offer-counteroffer provision of Minn.Stat. § 549.09, subd. 1(b) (1992). The construction and interpretation of a statute is a question of law which we review de novo. *Hibbing Educ. Ass'n v. Public Employees Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

Minn.Stat. § 549.09, subd. 1(b) provides, as a general rule, that the prevailing party is entitled to preverdict interest computed from the time of commencement of the action. This general provision represents a legislative attempt to insure full compensation to the prevailing party by providing for interest from the beginning of the action. Patrick C. Diamond, Note, *The Minnesota Prejudgment Interest Amendment: An Analysis of the Offer–Counteroffer Provision*, 69 Minn. L.Rev. 1401, 1409 (1985). The statute goes on to explain the exception commonly referred to as the "offer-counteroffer provision":

> If either party serves a written offer of settlement, the other party may serve a written acceptance or written counteroffer within 30 days. After that time, interest on the judgment or award shall be calculated by the judge or arbitrator in the following manner. The prevailing party shall receive interest on any judgment or award from the time of commencement of the action or a demand for arbitration, or the time of a written notice of claim, or as to special damages from the time when special damages were incurred, if later, until the time of verdict, award, or report only if the amount of its offer is closer to the judgment or award than the amount of the opposing party's offer. If the amount of the losing party's offer was closer to the judgment or award than the prevailing party's offer, the prevailing party shall receive interest only on the amount of the settlement offer or the judgment or award, whichever is less, and only from the time of commencement of the action or a demand for arbitration, or the time of a written notice of claim, or as to special damages from when the special damages

were incurred, if later, until the time the settlement offer was made. Subsequent offers and counteroffers supersede the legal effect of earlier offers and counteroffers.

Minn.Stat. § 549.09, subd. 1(b). This provision modifies compensation-based recovery to encourage "an early dialogue between the parties in the hope of settlement." Diamond, *supra*, at 1409.

The trial court held that the statute requires offers to remain open for 30 days in order to come within the offer-counteroffer provision. The court stated:

> [I]n order to accept an offer or make a counter-offer, there must be a valid and still outstanding offer to act upon. One cannot accept or counter an offer that does not exist. Any action by a party after the 30-day period would simply be a new "offer" which could be met or countered by the other side.

In *Johnson v. Kromhout*, 444 N.W.2d 569 (Minn.App.1989), the plaintiff filed a wrongful death action against the defendant. The plaintiff later submitted a written settlement offer to the defendant who did not respond within the 60 days provided by section 549.-09, subd. 1(b).[1] Six months later, however, the defendant offered to settle and the plaintiff made a counteroffer within 60 days. The jury found for the plaintiff and awarded damages in an amount closer to the plaintiff's last counteroffer than to the defendant's offer. The trial court awarded prejudgment interest only from the date of the plaintiff's counteroffer to the date of verdict. *Id.* at 569–70. The plaintiff argued the defendant's failure to respond to the plaintiff's initial settlement offer forfeited the defendant's right to contest the calculation of prejudgment interest. This court stated:

> [the defendant's] subsequent offer supersedes the legal effect of [the plaintiff's] earlier offer.

Appellant argues the statute requires a counteroffer within 60 days or the right to make a counteroffer is waived. The statute's language, however, is permissive

("the other party may serve * * * a written counteroffer within 60 days"). Adopting [the plaintiff's] argument would lead to undue inflexibility in the operation of the statute.

*Id.* at 570. The court concluded the trial court's award of interest only from the date of the last written settlement offer would discourage settlement and therefore was inconsistent with legislative intent. *Id.* at 571.

■ We find this reasoning to be conclusive here; the trial court's interpretation imposes undue inflexibility in applying the statute. Minn.Stat. § 549.09, subd. 1(b), by its own terms, is permissive by providing that after one party serves an offer, the other party "may" respond within 30 days. The statute contains no express requirement on the amount of time for which offers must be held open. We decline to read such a limitation into the statute, given the strong policy behind the offer-counteroffer provision of encouraging settlement. *See* Minn.Stat. § 645.16 (1992) (in construing statutes, court must ascertain and give effect to the legislature's intention). Because of that policy, this court has "specifically rejected the idea that the offer-counteroffer provision mandates responses to settlements within [30] days." *Stewart v. Anderson*, 478 N.W.2d 527, 530 (Minn.App.1991) (citing *Kromhout*, 444 N.W.2d at 570).

Moreover, the trial court's interpretation of the provision ignores the importance the statute places on the relative reasonableness of the offers. *See* Minn.Stat. § 549.09, subd. 1(b) (making the interest computation dependent on whose offer was closer to the verdict); *see also* Diamond, *supra*, at 1411 (under the preverdict interest statute, if the plaintiff prevails but the defendant's offer is closer to the verdict amount, "a penalty is assessed against the plaintiff for unreasonableness in settlement negotiations"). Under the trial court's interpretation, 3M received a penalty for not holding its offer open for 30 days, even though 3M held its offer open for a longer period than did Quade and, more

---

1. The legislature changed the time period for response to a settlement offer in Minn.Stat. § 549.09, subd. 1(b) from 60 days to 30 days in 1991 when the legislature included arbitration cases within the application of the statute. *See* 1991 Minn.Laws ch. 321, § 12.

importantly, 3M's offer was much closer than Quade's to the actual verdict.

Therefore, the trial court erred in not applying the offer-counteroffer provision of Minn.Stat. § 549.09, subd. 1(b). The court should have computed Quade's preverdict interest based on 3M's offer of $50,000, which is less than the verdict, for the period from commencement of the action to the date of 3M's offer.[2]

■ 2. 3M also appeals from the trial court's award to Quade of costs and disbursements. Minn.Stat. § 549.04 (1992) provides that "[i]n every action in a district court, the prevailing party * * * shall be allowed reasonable disbursements paid or incurred." The determination of what costs are reasonable is left to the discretion of the trial court. *Green–Glo Turf Farms v. State*, 347 N.W.2d 491, 495 (Minn.1984). We will reverse the trial court only for an abuse of this discretion. *Striebel v. Minnesota State High School League*, 321 N.W.2d 400, 403 (Minn. 1982). The trial court does not have discretion to deny costs and disbursements to the prevailing party. *Crince v. Kulzer*, 498 N.W.2d 55, 58 (Minn.App.1993) (citing *Jostens, Inc. v. National Computer Systems*, 318 N.W.2d 691, 704 (Minn.1982)).

■ 3M first argues the trial court erred in failing to hold an evidentiary hearing on the issue of costs and disbursements. We disagree. Minn.R.Civ.P. 54.04 requires only that "[t]he disbursements shall be stated in detail and verified by affidavit." To make sufficient findings of the reasonableness of costs and disbursements, however, the trial court must "take oral testimony * * * so a full record is available for review." *Stinson v. Clark Equip. Co.*, 473 N.W.2d 333, 338 (Minn.App.1991), *pet. for rev. denied* (Minn. Sept. 13, 1991). Nevertheless, "absent a specific finding that the costs were unreasonable, the court *shall* approve recovery of disbursements." *Jonsson v. Ames Constr.,*

*Inc.*, 409 N.W.2d 560, 563 (Minn.App.1987), *pet. for rev. denied* (Minn. Sept. 30, 1987) (emphasis in original).

■ Quade's attorney submitted an affidavit detailing its claimed disbursements, and 3M objected to some of these disbursements. At the posttrial hearing, the parties stipulated that the court's determination of allowable costs and disbursements would be made without further hearing. 3M thus waived its right to present evidence contradicting Quade's affidavits and supporting documentation. *See Tri–State Land Co. v. City of Shoreview*, 290 N.W.2d 775, 778 (Minn.1980) (prima facie case is dispositive in absence of contrary evidence); *see also Saylor v. Sass*, 258 Minn. 300, 305, 104 N.W.2d 36, 39 (1960) (rules of court may be waived by party benefitted by rule). The trial court did not err in deciding the issue without a hearing which 3M voluntarily waived.

We next turn our attention to whether the trial court abused its discretion in its disbursements award.

## A.  Trial Expert Witness Fees

■ 3M objected to Quade's request for $10,880 in preparation and trial time for two of Quade's experts. 3M argues Minn. R.Gen.P. 127 authorizes a maximum of only $300 per day for expert witness fee and no allowance "for preparation outside the courtroom by an expert." We disagree. Rule 127 is a limitation on the amount which the court administrator may tax, and the rule expressly provides that the limitation is "subject to increase or decrease by a judge." Moreover, Minn.Stat. § 357.25 (1992) permits a judge to allow expert fees "as may be just and reasonable." 3M's argument is without merit.

■ With regard to trial preparation fees, this court has upheld trial courts' allowance of pretrial preparation as part of the court's

---

**2.** We note that the trial court actually should have calculated the interest from the time of Quade's written notice of claim, which Quade served approximately 1½ months before filing suit. *See* Minn.Stat. § 549.09, subd. 1(b) ("interest shall be computed from the time of the commencement of the action * * * or the time of a written notice of claim, whichever occurs first").

Quade, however, has not challenged the trial court's interest calculation and in fact stated in its brief "[i]nterest was correctly calculated from the date the suit was commenced." *See Lener v. St. Paul Fire & Marine Ins. Co.*, 263 N.W.2d 389, 390 (Minn.1978) (where party fails to contest trial court order on appeal, the point is deemed waived).

discretion in awarding just and reasonable compensation under section 357.25. *See Mohwinkel v. City of North St. Paul,* 357 N.W.2d 174, 177 (Minn.App.1984), *pet. for rev. denied* (Minn. Feb. 19, 1985); *see also Stinson,* 473 N.W.2d at 337 (district court has discretionary authority to award expert witness fees, including compensation for trial preparation). The trial court here allowed all of Quade's requested expert witness costs, except for discovery the court ordered due to Quade's lack of cooperation and the expert's deposition preparation. Quade provided a detailed breakdown of the witnesses' costs, and the court made findings with respect to each. Although the court made no finding with respect to the normal hourly charges of the experts, *cf. Spinett, Inc. v. Peoples Natural Gas Co.,* 385 N.W.2d 834, 840 (Minn.App. 1986), Quade did specify in its affidavit the amount of time the expert billed and the total cost, upon which the trial court could and did decide that the amounts were "fair, reasonable, and necessary." The trial court also knew the expert's qualifications through his testimony, and thus could determine the reasonableness of the fees. *See Johnson v. Southern Minn. Machinery Sales, Inc.,* 460 N.W.2d 68, 73 (Minn.App.1990) (considering complexity of the case, allowance of expert witness' costs exceeding $10,000 was within the trial court's discretion). Thus, the trial court did not abuse its discretion in awarding expert witness fees for trial time and trial preparation.

## B. Discovery Witness Fees and Mileage

■ 3M also objects to various, allegedly unsupported costs. 3M first takes issue with a $900 witness and mileage fee for a former Quade employee, Scott Banning; Quade simply gave the $900 figure for this witness without any other explanation. Banning's three-hour deposition for which he flew here from Connecticut on short notice, however, is in the record. Although $900 seems somewhat high, it was within the court's discretion to award.

■ Next, 3M objects to the $541 for Quade's attorney's out-of-town deposition. Although he did not attach supporting documentation, Quade's attorney verified this

amount in his affidavit. 3M does not argue this witness' deposition should not have been taken but rather that it was "not necessary" because Quade could have taken the deposition by telephone. Quade was not required to do so by Minn.R.Civ.P. 30.02(g), and the trial court found this expense to be "fair, reasonable, and necessary." The court did not abuse its discretion in awarding these costs.

■ 3M also argues it should not have to pay for Quade's expert's deposition time because the expert's opinion changed from the time of deposition to the time of trial, so the deposition testimony was useless at trial. "The fact that a deposition was not used at trial does not bar deposition costs." *Johnson,* 460 N.W.2d at 73. The court acted within its discretion in awarding this cost. *See id.*

## C. Deposition Transcripts

■ 3M contends there was no showing that the deposition costs were necessary. The costs of taking depositions are allowable within the court's discretion unless the depositions were cumulative or duplicative. *Stinson,* 473 N.W.2d at 337–38. Quade's attorney attached all of the court reporters' invoices to his affidavit and listed and attributed each deposition expense. In reviewing the list, the court disallowed costs for a partial trial transcript unnecessary to the prosecution of Quade's claims. Thus, Quade presented sufficient support for its deposition costs, and the court did not abuse its discretion in awarding these costs.

### DECISION

The trial court erred in interpreting the offer-counteroffer provision of Minn.Stat. § 549.09, subd. 1(b) (1992) as requiring settlement offers to be held open for 30 days. The trial court acted within its discretion in awarding costs and disbursements to Quade because 3M waived its right to an evidentiary hearing on the reasonableness of Quade's requested costs and disbursements.

**Reversed in part, affirmed in part.**

NORTON, Judge (dissenting).

I respectfully dissent on the preverdict interest issue. *Johnson v. Kromhout,* 444 N.W.2d 569 (Minn.App.1989), is distinguishable from this case. There, this court addressed the issues of waiver by a party's failure to respond to a settlement offer within the time period provided by the preverdict interest statute and the effect a future counteroffer has on the calculation of preverdict interest. *Id.* at 570–71. Here, the issue is whether offers and counteroffers must be held open for the entire period for response provided by Minn.Stat. § 549.09, subd. 1(b) (1992) (30 days). I think the appropriate answer is yes.

3M attempts to distinguish "time for response," which 3M admits the statute addresses, with the time period during which an offer is held open. Under traditional contract law, there is no distinction. If a party, as here, holds an offer open for only 14 days and the other party attempts to respond on day 15, the acceptance or counteroffer is invalid. *See Callender v. Kalscheuer,* 289 Minn. 532, 533, 184 N.W.2d 811, 812 (1971) (where the offeree failed to accept within the time period provided by the offeror, no legally enforceable contract resulted from the offeree's later attempted acceptance); *see also* Restatement (Second) of Contracts §§ 35(2), 36(b), 41(1) (1981) (a contract cannot be created by acceptance of an offer after the power of acceptance has been terminated by lapse of time which may be specified as a condition in the offer). The "time for response" then *is* the amount of time that the offeror holds the offer open. The statute expressly provides that the offeree "may" accept or counter "within 30 days." This court should read "may" to mean the offeree may choose not to respond to a settlement offer as *Kromhout* instructs, but if the offeree does choose to respond, that party has 30 days. The majority's opinion simply reads "30 days" out of the statute, which is contrary to our role in interpreting statutes. *See* Minn.Stat. § 645.16 (1992) ("the letter of the law shall not be disregarded under the pretext of pursuing the spirit"). Because neither party extended an offer which was held open for 30 days, I would find that the offer-counteroffer exception of Minn. Stat. § 549.09, subd. 1(b) does not apply.