James OLSON, et al., Respondents,

v.

**ALEXANDRIA INDEPENDENT SCHOOL DISTRICT # 206, Appellant.**

No. A03–1104.

Court of Appeals of Minnesota.

June 8, 2004.

Tracey R. Lindberg, Tracey R. Lindberg Law Firm, P.A., Breckenridge, MN, for respondents.

John C. Lervick, Swenson Lervick Syverson Anderson Trosvig Jacobson, P.A., Alexandria, MN, for appellant.

Considered and decided by MINGE, Presiding Judge, SHUMAKER, Judge, and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

A jury found (special verdict question # 3) that appellant school district was negligent, but (question # 4) that this negligence was not the direct cause of any injury to Jamie Olson, whose claims were pursued by respondents, his parents. But the jury also found (question # 5) that $15,000 would compensate Jamie for "damages directly caused by the conduct of [appellant]." Appellant contends that these responses are consistent, and that the jury determined the amount of damages only because it was compelled to do so by the trial court's instructions.

The trial court concluded that the jury answers were inconsistent but that they could be reconciled by entering judgment in favor of respondents in the amount of $15,000. The court first observed that verdict question # 4, on direct cause, dealt with "injury," that question # 5 spoke of "damages," and that question # 5 specifically included the category of "[p]ain, embarrassment and emotional distress," the

category chosen by the jury when it inserted the figure of $15,000. Both questions used causation language.

The court then noted that its instructions broadly referred to damages and discussed liability and damages only with use of the term injury. The court reasoned that "there was a genuine opportunity for misunderstanding" on the part of the jury—its belief that damages (question # 5) included all harm, specifically including pain, embarrassment, and emotional distress, and that injury (question # 4) did not deal with those topics.

In fact, the court determined, it was "more reasonable" to find that this confusion occurred than to think that the jury simultaneously found that respondent "did and did not directly cause an injury." As a result, the court concluded that question # 5 was seen to regard liability for pain and distress that occurred shortly after Jamie was assaulted by other students, but that the jury's answer to question # 4 dealt with injuries Jamie ultimately suffered after the assault. Because this trial court analysis is sufficiently reasonable, it did not constitute an abuse of discretion and must be affirmed.

## FACTS

On May 24, 2000, two middle school fellow students assaulted 15–year–old Jamie Olson in the gymnasium locker room. Jamie has below-average mental functioning and suffers from attention deficit disorder. Prior to this incident, Jamie's mother talked to his school case manager on several occasions about her concerns that Jamie was being harassed at school because he was in special education classes.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

After the assault, Jamie had contacts with the gym teacher, a health paraprofessional, and an assistant principal. The assistant principal took disciplinary action on the two boys involved in the incident, but respondents were not contacted, and there is testimony supporting their claim that Jamie's requests to contact his mother were inappropriately neglected.

Jamie reported to his third hour class, which was also attended by one of the students involved in the locker room incident. The teacher had not been informed of the event. During class, this student made faces at Jamie that made him feel nervous and scared. Jamie testified that people were making fun of him for the rest of the day, including during lunch and on the bus ride home, and he feared another attack would occur.

When Jamie arrived home from school that day, his mother noticed that his face was swollen and she sensed that something was wrong with him. Jamie told his mother what had happened at school, and because Jamie was suffering from a headache and vomited several times, his mother took him to a medical clinic. Jamie subsequently became socially isolated and was reluctant to leave home. He refused to return to school because he feared he would be attacked again, and his mother home schooled him for the remainder of the school year. The following school year, Jamie refused to attend high school after observing one of the attackers at the school. He enrolled at an alternative school, and his social behavior improved.

At trial, expert medical testimony addressed Jamie's fears resulting from the assault and two experts indicated that Jamie suffered posttraumatic stress disorder. One of these witnesses testified that the school's lack of response and failure to contact respondents prolonged the traumatic event. Appellant's expert testified that Jamie did not suffer from posttraumatic stress disorder but from anxiety, possible depression, and an adjustment disorder.

After the jury answered the special verdict questions and the trial court entered its judgment for the school district, respondents moved for judgment notwithstanding the verdict or a new trial, arguing that the jury's verdict was perverse and irreconcilable because the jury's finding on damages "caused by" the school's conduct conflicted with the jury's earlier finding on causation. The court denied JNOV or a new trial, but granted respondents' motion for entry of judgment for $15,000 for past pain, embarrassment, and emotional distress.

Appellant moved the court to amend its earlier order to properly reflect that it had granted JNOV in favor of respondents. In its subsequent order, the court reiterated that it had denied respondents' motions for JNOV or a new trial, but granted them a $15,000 judgment based on its reconciliation of inconsistent jury responses.

## ISSUES

1. Did the trial court err in concluding that the jury made a separate assessment of causation when it awarded damages in question # 5 of the special verdict form?

2. Did the trial court err in awarding respondents expert-witness fees?

## ANALYSIS

### I.

A trial court's determination that jury findings are consistent is sometimes but not generally a question of law that appellate courts review de novo. *Haugen v. Int'l Transport, Inc.*, 379 N.W.2d 529, 531 (Minn.1986). When a jury finds that one defendant in a negligence action did

not cause the plaintiff's damages but then apportions a percentage of liability to that defendant, the inconsistency in the special verdict answers can be analyzed as a matter of law. *Id.*

▉ When answers to special verdict questions are correctly declared inconsistent, they are to be reconciled in any reasonable manner consistent with the evidence and its fair inferences. *Reese v. Henke,* 277 Minn. 151, 155, 152 N.W.2d 63, 66 (1967). The trial court has broad discretion to construe an inconsistent verdict to effect the intention of the jury and to harmonize answers if possible. *Hampton Bank v. River City Yachts, Inc.,* 528 N.W.2d 880, 892 (Minn.App.1995), *review denied* (Minn. Apr. 27, 1995).

▉ The scope of the trial court's discretion to analyze inconsistent answers includes rendering judgment against the party having the burden of proof, ordering a new trial, sending the jury back for further deliberations, or reconciling the inconsistent answers by interpreting them or partially directing a verdict to change the jury's response as a matter of law. *Musicland Group, Inc. v. Ceridian Corp.,* 508 N.W.2d 524, 534 (Minn.App.1993), *review denied* (Minn. Jan. 27, 1994). A trial court has "the same authority to set aside and change an answer to a question in a special verdict as it has to grant judgment notwithstanding the verdict, that is, where the evidence requires the change as a matter of law." *Orwick v. Belshan,* 304 Minn. 338, 343, 231 N.W.2d 90, 94 (1975).

In determining whether the jury's answers are inconsistent, we are presented with three possible outcomes. First, as appellant suggests, the court could conclude that the jury's answers are consistent and determine as a matter of law that appellant is not liable. Second, as respondents suggest, the court could find merit in the trial court's analysis. Third, as noted by respondents, the court could recognize that the jury's answers are inconsistent and remand for a new trial. We conclude that the trial court properly determined that the jury's answers are inconsistent and did not abuse its discretion in reconciling the inconsistency.

## II.

Appellant argues that the verdict answers are consistent because the trial court instructed the jury to answer the damages questions regardless of its answers to the negligence and causation questions. Appellant claims that these questions are no different than those on a special verdict form in an automobile accident case. *See* 4A Minnesota Practice, CIVJIG Spec. Verdict Form No. 65.90 (2004).

CIVJIG Spec. Verdict Form No. 65.90 instructs the jury that it must answer the damages question regardless of its answers to any of the other questions on the form. Generally, the damages question asks the jury to determine the amount of money that will compensate the plaintiff for damages directly caused "by the accident." But here the damages question asks for an amount to compensate Jamie Olson for damages directly caused "by the conduct of Independent School District # 206 on May 24, 2000[.]"

Significantly, the language of this damages question was specifically requested by appellant. Although appellant was reasonably concerned about the jury including damages that were attributable to Jamie's fellow students, a different selection of language would have prevented the present conflict.

Under the circumstances, the trial court properly determined that the jury's answers were inconsistent.

## III.

The trial court explained its resolution of inconsistent answers by noting that the jury most likely intended to indicate that Jamie Olson suffered "some immediate pain, embarrassment and emotional distress" as a result of action or inaction by school staff, but that negligence by staff "was not the cause of Jamie's ongoing problems." The court reasoned that the jury might have understood that the "injury" in the causation question referred to posttraumatic stress disorder and other ongoing problems. Or the jury may have thought that injury was linked to physical injuries resulting from the assault.

The trial court did not instruct the jury on the definition of "injury" and gave a broad definition of damages, which might reasonably have been found, as indicated in the language of special verdict question # 5, to include pain, embarrassment, and emotional distress. It was equally reasonable for the trial court to associate this finding with evidence on the effects of the immediate response by the school staff.

We conclude that it was within the scope of the trial court's exercise of discretion to find that it was reasonable for the jury to conclude, indicating the jury's intentions that "damages," specified in its answer to question # 5, meant something different than "injury." Similarly, the trial court did not err in determining that this reading of the verdict was more reasonable than a finding that the jury meant to say both that injuries were and were not caused by appellant.

Case precedent lends support for the trial court's reconciliation. *See Meinke v. Lewandowski,* 306 Minn. 406, 237 N.W.2d 387 (1975). In *Meinke,* the jury concluded that one defendant's negligence, not the plaintiff's or another defendant's negligence, was the direct cause of plaintiff's injuries. Nonetheless, the jury appor-

tioned 10% of the fault to the plaintiff and 20% to the other defendant. *Meinke,* 306 Minn. at 409, 237 N.W.2d at 390. The trial court directed the jury to resolve the inconsistency by changing its answer on the apportionment question. The Minnesota Supreme Court concluded that the trial court infringed on the jury's factfinding function and remanded for a new trial. While *Meinke* involves an apportionment case, it is relevant to show that a trial court errs when it ignores a damages question that is inconsistent with the negligence and causation questions.

The evidence in this case would have supported a jury verdict in favor of appellant or respondents. Evidence indicated that the school failed to call respondents or instruct Jamie's teachers of the incident, and the jury found that the school district was negligent. Further, although one expert opined that Jamie suffered from a fear of the alleged perpetrators, another found that the school district's lack of a response and failure to contact respondents enlarged the traumatic event. Two experts found that Jamie suffered a posttraumatic stress disorder. There was sufficient evidence to support a jury verdict that found that the school district caused some damages.

Finally, appellant's analysis tends to complement that of the trial court. In its brief, appellant calls for letting the verdict stand on the finding of no causation, but quotes the court's reconciliation explanation and acknowledges that it correctly explains that the finding of no causation was meant to address Jamie's ongoing problems. Contrary to appellant's conclusion, the trial court reasoned that its theory gave effect to both the negligence causation answer and the finding that the school district directly caused $15,000 in damages to Jamie. We conclude that the

trial court did not abuse its discretion in reconciling the inconsistent jury answers.

## IV.

■ Appellant also argues that the trial court erred by awarding respondents $8,065 in expert witness fees because the witness included compensation for preparation time. An appellate court reviews a trial court's award of costs and disbursements, including expert-witness fees, for an abuse of discretion. *Kellar v. Von Holtum*, 605 N.W.2d 696, 703 (Minn.2000) (costs and disbursements in general); *Carpenter v. Mattison*, 300 Minn. 273, 280, 219 N.W.2d 625, 631 (1974) (expert-witness fees). The court is authorized to allow such fees or compensation as may be just and reasonable for expert witnesses. Minn.Stat. § 357.25 (2002). And contrary to appellant's contention, the court may, in its discretion, "allow pretrial preparation time in awarding just and reasonable" compensation under Minn.Stat. § 357.25. *Quade & Sons Refrigeration, Inc. v. Minnesota Min. & Mfg. Co.*, 510 N.W.2d 256, 260–61 (Minn.App.1994), *review denied* (Minn. Mar. 15, 1994); Minn. R. Gen. Pract. 127. We find no reversible error in the inclusion or valuation of the expert's fees preparation time.

## DECISION

Because of the specific language used in the damages questions in this case, the trial court properly concluded that the jury's answers were inconsistent. The court did not abuse its discretion in determining that this inconsistency could be reconciled by giving effect to all of the jury's answers and entering judgment in favor of respondents in the amount of $15,000.

**Affirmed.**

GORDON W. SHUMAKER, Judge, (dissenting).

I respectfully dissent and write separately to suggest the inappropriateness of the trial court's resolution of the verdict issue and to note the uselessness of having juries answer damages questions after they have decided that defendants are not liable for damages.

I do not quarrel with the fact that the inartful wording of Question # 5 created a predictable, apparent inconsistency in the verdict because it seemed to reintroduce a causation issue after causation had been definitively decided in Question # 4.

But, in resolving the apparent inconsistency, the trial court lost sight of the fact that Question # 5 is not a causation question but rather is a damages question. There is no tenable basis for thinking the jury was answering liability causation questions twice or that it purposely contradicted itself. In Question # 4, the jury said that the school district's conduct was not a direct cause of "any injury" to Olson. Did the jury then, in the very next question, contradict itself and say that the school district nevertheless directly caused $15,000 in damages to Olson? I think that is a very skewed reading of the verdict.

The case ended when the jury clearly found in Question # 4 that the school district's conduct did not directly cause any injury to Olson. The damages questions then became superfluous and no longer controlled the outcome of the case. The effect of the court's interpretation of Question # 5 was to give the jury two opportunities to find causal liability—one through the straightforward Question # 4 and one through a question that seemed to be asking about damages rather than liability. I know of no authority that provides a jury with more than one chance to answer liability questions on a special verdict. Thus, the court should not resolve this apparent

inconsistency by ignoring the true liability question in favor of the "hidden" liability question. If the court cannot resolve the issue in favor of the school district, as I believe it should, then it ought to grant the parties a new trial.

My second concern is that there is neither authority nor good reason for requiring a jury to answer damages questions after it clearly finds that a party has no liability for damages. I am aware that the JIG special verdict form carries that directive. But the JIG verdict form is not the law; rather it is merely a guide, and I have been unable to locate either decisional authority or a rule requiring damages answers after a finding of no liability. Thus, I suggest the practice has become customary but is not at all required.

The likely purpose of having the jury answer damages questions after it has found no liability is the thought that, if there is an appeal and a reversal, the whole case will not have to be retried. Perhaps only the liability issue would have to be retried and the damages determination can stand. This is surely a good theory but is not plausible in practice. I suggest that when the jury knows that the damages answers do not count, it really does not invest the time and attention it should to reach a meaningful assessment of damages. Additionally, as this case illustrates, by having the jury answer a superfluous damages question, the trial court runs the risk of creating needless posttrial and appellate issues.

I would not let the result the trial court reached stand but would reverse and remand for a new trial.