*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-2058**

Dustin Ray George Dittmar,
Appellant,

vs.

George Andrew Karels, et al.,
Respondents.

**Filed December 19, 2016**
**Affirmed**
**Peterson, Judge**

McLeod County District Court
File No. 43-CV-14-516

Christopher L. Goodman, Anderson Helgen Davis & Nissen PA, Minneapolis, Minnesota (for appellant)

Dyan J. Ebert, Michael D. LaFountaine, Rachael R. Presler, Quinlivan & Hughes, P.A., St. Cloud, Minnesota (for respondents)

Considered and decided by Bratvold, Presiding Judge; Peterson, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this appeal following a jury verdict in a personal-injury action, appellant/cross-respondent challenges the district court's denial of his motions for attorney fees and expert-witness fees and his request to file a motion to amend the complaint. Respondents/cross-

appellants challenge the district court's denial of their request for costs and disbursements. Because the district court did not abuse its discretion in denying the motions and request or in awarding costs and disbursements, we affirm.

**FACTS**

While driving on a county road in Winsted, 19-year-old respondent/cross-appellant George Andrew Karels (Karels) rear-ended a Ford F-150 pickup truck driven by appellant/cross-respondent Dustin Ray George Dittmar (Dittmar). Karels was driving a 17,000-pound Peterbilt dump truck with a 1.86-ton load for his family's scrap-metal business, respondent/cross-appellant Karels Brothers and Sons (KBS). Dittmar was stopped in his lane waiting to make a left-hand turn, and he sustained or exacerbated neck, back, and shoulder injuries.

Dittmar brought a personal-injury action against Karels and his parents individually, and Karels' parents doing business as KBS (collectively, respondents). In addition to claims for negligence and vicarious liability, the complaint alleged that Dittmar was entitled to attorney fees, costs, and disbursements under Minn. Stat. § 221.271 (2014) because KBS violated federal motor-carrier safety regulations while transporting property in interstate commerce and, under Minn. Stat. § 221.605 (2014), interstate motor carriers must comply with federal motor-carrier safety regulations.

Before initiating the action, Dittmar sought the services of David Stopper, an expert in forensic and collision investigations, traffic safety, and commercial motor-vehicle operations and safety regulations. According to Dittmar, he retained Stopper:

2

(1) to conduct an inspection of the Peterbilt truck . . ., (2) to visit and examine the accident scene, (3) . . . to testify about the collision including whether . . . the brakes were engaged on Respondents' vehicle and the speed of the vehicle at impact, and (4) to advise [Dittmar's] counsel and . . . testify about federal motor carrier safety regulations and Respondents' violations of them.

Stopper inspected the vehicle and accident scene, but he did not prepare a report, was not disclosed as an expert before the expert-witness disclosure deadline, and did not testify at trial.

Respondents made three offers to settle the case before trial. On July 15, 2014, they offered $100,000; on April 28, 2015, they offered $165,000; and on May 15, 2015, they offered $125,000. Dittmar rejected the offers. On May 13, 2015, respondents' counsel notified the district court that respondents admitted fault in causing the accident. Respondents made a motion in limine to exclude evidence of liability, including all evidence, testimony, and argument relating to KBS's history of registering its work vehicles or to Karels's driver's license, registration, and traffic-citation history.

The district court agreed with respondents' position and explained:

I think the [respondents] have the right and opportunity to admit liability really at any stage of the proceedings. I realize that there is maybe strategy and tactics sometimes involved in these decisions; but if liability is admitted, then I see no purpose in taking evidence which would be exclusive only to the liability issue, so -- as I indicated in chambers, that would not necessarily exclude evidence that had probative value in regards to causation of injuries or extent of injuries; and whether one particular thing, one piece of evidence should or should not go in, I'll leave up to your determination as far as what you wish to offer and what you wish to object to.

3

The case went to trial before a jury solely on issues concerning damages. The jury returned a verdict in favor of Dittmar and awarded him compensatory damages of $81,297.82. Dittmar moved for attorney fees, costs, and disbursements under Minn. Stat. § 221.271. Dittmar argued that, as a private carrier operating a commercial vehicle, KBS was required under Minn. Stat. § 221.0314 (2014) to comply with operating requirements for private carriers set forth in Minn. Stat. § 221.031 (2014). Dittmar contended that he was entitled to a mandatory award of fees and costs under section 221.271 because Karels operated a commercial vehicle when he did not possess a commercial driver's license and failed to exercise reasonable care, which violated duties imposed by sections 221.031 and 221.0314.

Following a hearing, the district court denied Dittmar's motion for attorney fees. The district court concluded that an attorney-fee award was not supported by the existing factual findings and declined to make findings under Minn. R. Civ. P. 49.01(a) that would allow a fee award. With regard to other posttrial motions, the district court denied Dittmar's request to amend the complaint, denied Dittmar's request for $10,795.58 in expert-witness fees for Stopper, awarded Dittmar $2,007.13 for costs and disbursements as the prevailing party, and denied respondents' request for $7,998.92 in costs and disbursements, which respondents sought on the basis that the jury's $81,297.82 damages award was less than respondents' first settlement offer of $100,000.

Dittmar appealed, challenging the district court's denials of his motions for attorney fees and expert-witness fees, and his request to amend the complaint. Respondents filed a

4

notice of related appeal and argue that the district court abused its discretion in denying their claim for costs and disbursements.

## D E C I S I O N

### I.

"Attorney fees are available by statute and by court rule." *Peterson v. 2004 Ford Crown Victoria*, 792 N.W.2d 454, 461 (Minn. App. 2010). "We generally review a district court's award of costs and disbursements for an abuse of discretion. Whether the district court erred in its interpretation of the statute authorizing the award of costs and disbursements . . . , however, is a legal question that we review de novo." *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 155 (Minn. 2014) (citation omitted). Whether the district court erred in concluding that the existing factual findings did not support an award of attorney fees, costs, and disbursements under Minn. Stat. § 221.271 is a legal question, which we review de novo. *See In re Silicon Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 422 (Minn. 2003) (stating that an award of attorney fees predicated on a specific finding is a question of law subject to de novo review).

Minnesota Statutes chapter 221 regulates motor carriers. The commissioner of transportation or any interested person may institute an action or proceeding to enforce any provision of chapter 221. Minn. Stat. § 221.261 (2014). Any person who does an act that is unlawful under chapter 221 or who fails to perform any duty prescribed under chapter 221 "shall be liable in damages to any person injured thereby, and such person, if the person recovers, shall be allowed, in addition to damages, reasonable attorneys' fees, together with costs and disbursements." Minn. Stat. § 221.271 (2014).

In his complaint, Dittmar sought attorney fees under Minn. Stat. § 221.271, alleging that "KBS was an interstate motor carrier, as that term is defined in Minnesota Statute § 221.012, subd. 20" and, "[u]nder Minnesota Statute § 221.605, interstate motor carriers must comply with federal motor carrier safety regulations." The complaint alleged that KBS violated specific federal motor-carrier safety regulations by allowing Karels to operate a commercial vehicle without a commercial driver's license and by operating a passenger-carrying vehicle without a valid medical certificate, without proper load securement, and with an inoperable required lamp.

After trial, Dittmar moved for attorney fees under section 221.271, arguing that, as a private carrier operating a commercial vehicle, KBS was required to comply with federal regulations incorporated in Minn. Stat. § 221.0314 to the extent required by Minn. Stat. § 221.031. Specifically, Minn. Stat. § 221.031, subd. 2(b)(1), requires that "private carriers engaged in intrastate commerce" comply with federal driver qualifications incorporated in Minn. Stat. § 221.0314, subdivisions 2 to 5, including 49 C.F.R. § 391.11(a) (2014), which requires that the operator of a commercial motor vehicle have a valid commercial motor-vehicle operator's license. Dittmar argued that KBS violated this regulation when it allowed Karels to operate the Peterbilt truck without a commercial driver's license. Dittmar also argued that Karels violated Minn. Stat. § 221.0314 by failing to exercise reasonable care when operating a motor vehicle, in violation of 49 C.F.R. § 392.2 (2014) and Minn. Stat. § 169.14, subd. 1 (2014).

In denying Dittmar's motion, the district court first noted that, in his complaint, Dittmar alleged that he was entitled to a fee award because respondents violated Minn.

6

Stat. § 221.605, which required *interstate* carriers to comply with federal regulations, but, in his posttrial motion, he alleged that he was entitled to a fee award because respondents violated Minn. Stat. §§ 221.031 and 221.0314, which required *intrastate* carriers to comply with federal regulations. The court explained that, because the violations of section 221.605 that were alleged in the complaint were not brought to the court's attention either before or during trial, the jury was never asked to determine whether section 221.605 was violated. The court then concluded that the existing factual findings, whether made by the jury or provided by respondents' admission that they caused the accident, were not sufficient for the court to determine that Minn. Stat. §§ 221.031 and 221.0314 were violated.

*Existing findings*

Dittmar argues that, because respondents' admissions established violations of duties imposed by Minn. Stat. §§ 221.031 and 221.0314, the district court erred in concluding that the existing factual findings were not sufficient to award fees under Minn. Stat. § 221.271.

*Commercial driver's license*

Under Minn. Stat. § 221.0314, subd. 2, anyone who drives a commercial vehicle must comply with 49 C.F.R. § 391.11(a), (b)(5) (2014), which requires that the driver have a valid commercial driver's license. Dittmar contends that respondents' admission that Karels was driving a commercial vehicle without a commercial driver's license is sufficient to establish a violation of a duty imposed under Minn. Stat. § 221.0314, subd. 2. But Minn. Stat. § 221.271 provides that a person who violates a duty prescribed under chapter 221

7

"shall be liable in damages *to any person injured thereby*." (Emphasis added.) To obtain an attorney-fee award under section 221.271, Dittmar needed to establish both a violation of a duty and that he was injured by the violation. The district court did not determine that respondents' admission was insufficient to establish a violation, it determined that, even if there was a violation, Dittmar was not entitled to recover attorney fees because "[t]here were no admissions, nor any findings of the jury, that the lack of a commercial driver's license caused [Dittmar's] injuries."

*Admission that respondents caused accident*

Minn. Stat. § 221.0314, subd. 6, incorporates by reference 49 C.F.R. § 392.2, which provides that "[e]very commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated." Minn. Stat. § 169.14, subd. 1 (2014), provides:

> No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions. Every driver is responsible for becoming and remaining aware of the actual and potential hazards then existing on the highway and must use due care in operating a vehicle. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

Dittmar argues that, because a failure to use due care is negligence, and a failure to use due care violates section 169.14, subdivision 1, respondents' admission that they were negligent established a violation of section 169.14, which, in turn, established violations of 49 C.F.R. § 392.2 and Minn. Stat. § 221.0314, subd. 6. But section 169.14, subdivision 1, imposes a duty on a driver to use due care in operating a vehicle, and respondents'

8

admission that they caused the accident did not identify a negligent act or establish that Karels failed to use due care. We agree with the district court that a general admission of negligence does not always mean that section 169.14, subdivision 1, was violated. The accident could have been caused by negligence other than Karels driving too fast or failing to exercise due care while driving.[1]

We also agree with the district court's additional determination that respondents' admission of negligence could not have been a direct admission that they violated Minn. Stat. §§ 221.031 and 221.0314 because neither of those statutes became relevant to the case until after the trial. Furthermore, as the district court also determined, Minn. Stat. §§ 221.031 and 221.0314 apply to "private carriers engaged in intrastate commerce." Minn. Stat. § 221.031, subd. 2(b)(1). Therefore, without a finding that respondents were engaged in intrastate commerce, the court could not find that Minn. Stat. §§ 221.031 and 221.0314 were violated. Respondents' admission of negligence was not an admission that they were engaged in intrastate commerce.

Dittmar argues that a finding that respondents were engaged in intrastate commerce was not needed because this fact was not disputed. Dittmar contends that it was "undisputed that Respondents registered with the [Federal Motor Carrier Safety

---

[1] Dittmar argues that the jury could not have been asked to determine whether violations of federal regulations caused the accident because the district court's ruling on respondents' motion in limine excluded all evidence of liability. But the district court explicitly stated that its ruling "would not necessarily exclude evidence that had probative value in regards to causation of injuries or extent of injuries." Dittmar did not offer evidence of violations to prove that the violations caused his injuries.

9

Administration] as an 'Intrastate Non-Hazmat Carrier' 10 years before the accident." But Dittmar does not explain how a registration that occurred ten years before the accident established that respondents were engaged in intrastate commerce at the time of the accident.

The district court did not err in concluding that the jury's findings and respondents' admission were not sufficient to establish that respondents violated Minn. Stat. §§ 221.031 and 221.0314 and that the violation caused Dittmar's injuries.

## II.

After ruling that the existing factual findings were insufficient to establish that respondents violated Minn. Stat. §§ 221.031 and 221.0314, the district court considered whether it had authority under Minn. R. Civ. P. 49.01(a) to find that a violation occurred. That rule states, in part:

> The court shall give to the jury such explanations and instructions concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. *As to an issue omitted without such demand, the court may make a finding*; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

(Emphasis added.)

The district court determined that Dittmar's complaint alleged violations under Minn. Stat. § 221.605 and did not allege that Dittmar was entitled to recover attorney fees for violations of Minn. Stat. § 169.14, 43 C.F.R. 392.2, or Minn. Stat. §§ 221.031 and

221.0314. The court further determined that Dittmar's complaint did not provide respondents with notice that Dittmar would seek attorney fees by the circuitous route set forth in his posttrial motion, and the court could not recall any evidence admitted during trial regarding whether respondents operated as an intrastate carrier. Based on these determinations, the court concluded that it did not have authority to make findings that respondents violated Minn. Stat. §§ 221.031 and 221.0314, and, even if it did have authority to make findings, it declined to do so because Dittmar failed to raise these fact issues during trial and failed to inquire of the court whether the issues should be submitted to the jury or left for the court to determine.

Dittmar argues that his complaint properly raised a claim for attorney fees under section 221.271 that was predicated on respondents' failure to exercise reasonable care and that "[t]he district court erred because it held [his] pleading to a far higher standard than what our Rules require." We disagree.

"We review de novo whether a complaint sets forth a legally sufficient claim for relief. We accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party." *Walsh v. U.S. Bank*, *N.A*, 851 N.W.2d 598, 606 (Minn. 2014) (citation omitted). "Minnesota is a notice-pleading state and does not require absolute specificity in pleading, but rather requires only information sufficient to fairly notify the opposing party of the claim against it." *Id*. at 604-05 (quotation omitted).

Dittmar argues that respondents had notice that he was asserting a claim for attorney fees under Minn. Stat. § 221.271 and that they were liable for attorney fees for any violation of chapter 221. He further argues that respondents had notice that they were subject to

11

federal motor-carrier safety regulations and that federal regulations required them to comply with Minnesota Statutes chapter 169. We agree that Dittmar's complaint provided sufficient information to fairly notify respondents that Dittmar was asserting a claim for attorney fees under Minn. Stat. § 221.271, but we do not agree that respondents had fair notice that the factual basis for the claim was that respondents violated Minn. Stat. § 169.14, subd. 1.

In the complaint, Dittmar alleged that KBS was an interstate motor carrier and that, under Minn. Stat. § 221.605, interstate motor carriers must comply with federal regulations. Dittmar did not allege that KBS was an intrastate motor carrier or that intrastate motor carriers must comply with federal regulations. Also in the complaint, Dittmar alleged that KBS violated several specific federal regulations, but none of the cited regulations required KBS to comply with Minnesota Statutes chapter 169.

To become aware that the complaint was asserting the claim for attorney fees that Dittmar asserted in his posttrial motion, respondents would have needed to infer that an interstate motor carrier's obligation to comply with federal regulations under Minn. Stat. § 221.605 also applied to an intrastate motor carrier under Minn. Stat. §§ 221.031 and 221.0314. Then respondents would have needed to infer that a federal regulation that was not cited in the complaint as a basis for attorney fees required an intrastate motor carrier to comply with the provisions of Minnesota Statutes chapter 169 and that Minn. Stat. § 169.14, subd. 1, required Karels to exercise due care when driving for KBS. Finally, respondents would have needed to infer that Dittmar's damages were caused by Karels's failure to exercise due care. Although the circuitous claim for attorney fees asserted in

12

Dittmar's posttrial motion may have been available under Minn. Stat. § 221.271, the complaint did not provide respondents fair notice of the claim.

**III.**

Dittmar requested an opportunity to bring a motion to amend the complaint if the district court deemed the complaint to be deficient. The district court denied the request as untimely, prejudicial, and futile.

Within 20 days after a responsive pleading is served, a party may amend a complaint, but after that time "a party may amend a pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Minn. R. Civ. P. 15.01. "[A]mendments should be freely granted, except where to do so would result in prejudice to the other party." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). "Whether a party is prejudiced is a question of fact." *Fedie v. Mid-Century Ins. Co.*, 631 N.W.2d 815, 820 (Minn. 2001), *review denied* (Minn. Oct. 16, 2001). "The trial court has wide discretion to grant or deny an amendment, and its action will not be reversed absent a clear abuse of discretion." *Fabio*, 504 N.W.2d at 761.

The district court did not clearly abuse its discretion when it summarily denied Dittmar's request to file a motion to amend the complaint. Dittmar waited until after trial to assert a claim for attorney fees that depended in part on fact issues that were not presented to the jury and established at trial. Respondents were not put on notice of the circuitous statutory bases for awarding fees, and thus, did not prepare to address this issue

13

at trial. Under these circumstances, respondents would be prejudiced if the attorney-fee issue was raised by a posttrial amendment to the complaint.[2]

**IV.**

Dittmar argues that the district court abused its discretion by denying his request for $10,795.58 in expert-witness fees for David Stopper's services. The district court may award expert-witness fees that are "just and reasonable" for "any witness [who] is summoned or sworn and examined as an expert in any profession or calling." Minn. Stat. § 357.25 (2014); *see* Minn. R. Gen. P. 127 (permitting "reasonable" expert-witness fees, with the limitation that "[n]o allowance shall be made for preparation or in conducting of experiments outside the courtroom by an expert"); *see also Johnson v. S. Minn. Machinery Sales, Inc.*, 460 M.W.2d 68, 73 (Minn. App. 1990) (affirming an award of greater than $10,000 in expert-witness fees in a complex case, ruling that the fees awarded were within the district court's discretion), *review denied* (Minn. Sept. 21, 1989). In Minnesota, appellate courts have permitted payments of fees to expert witnesses for trial preparation. *See Lake Superior Ctr. Auth. v. Hammel, Green & Abrahamson, Inc.*, 715 N.W.2d 458, 483 (Minn. App. 2006), *review denied* (Minn. Aug. 23, 2006); *Olson v. Alexandria Ind. Sch. Dist. No. 206*, 680 N.W.2d 583, 589 (Minn. App. 2004). This court reviews for abuse of discretion a district court's decision to award expert-witness fees. *Id*. "[A] discretionary

---

[2] Although Dittmar argues that the district court erred by failing to articulate the prejudice to respondents on which the denial of the request to file a motion to amend was based, the district court's order denying the request states that the request was untimely and that respondents had no notice of the claim—both of which demonstrate prejudice.

award of expert witness fees will be disturbed only in cases where abuse of discretion is apparent." *Carpenter v. Mattison*, 300 Minn. 273, 281, 219 N.W.2d 625, 631 (1974).

In *Buscher v. Montag Dev., Inc.*, 770 N.W.2d 199 (Minn. App. 2009), this court affirmed an award of more than $10,000 in expert-witness fees when the district court granted summary judgment to a defendant in a tort (mold-infiltration) action that was barred by the statute of limitations. 770 N.W.2d at 210. There, the expert witness "made site visits, reviewed documentation, obtained repair estimates, and made a report," and, even though the case was resolved on summary judgment, this court affirmed the district court's fee award, citing the district court's reasoning that the party who hired the expert was "required to do investigative trial preparation in order to make dispositive motions and it would be 'misplaced' to deny [expert fees] because the matter was resolved by summary judgment." *Id*. at 209-10.

This case is distinguishable from *Buscher* because Stopper was never disclosed as an expert, was not "summoned or sworn and examined," was revealed only in a posttrial motion, and only a small portion of his services related to his knowledge of federal motor-carrier safety regulations. In addition, the district court apparently believed that Dittmar's case preparation was excessive, because, in denying fees for Stopper, the district court noted that the applicable insurance-policy limit was "only" $100,000 and suggested that some of Stopper's services, such as "electronic and laser-guided" accident reconstruction, were unnecessary in a two-car accident. The district court also rejected the claim that Dittmar failed to disclose Stopper as a witness due to respondents' concession of liability, noting that the liability admission occurred on May 11, 2015, but Dittmar's expert

15

witnesses were disclosed more than a month earlier, on April 3, 2015, and did not include Stopper. The district court's decision to deny Stopper's fees was not an abuse of discretion.

**V.**

In their related appeal, respondents argue that the district court abused its discretion by denying their request for $7,998.92 in costs and disbursements. Generally, the prevailing party is entitled to costs and reasonable disbursements. *Quade & Sons Refrigeration, Inc. v. Minnesota Mining & Mfg. Co.*, 510 N.W.2d 256, 260 (Minn. App. 1994), *review denied* (Minn. Mar. 15, 1994); *see* Minn. Stat. § 549.04 (2014) (stating that "[i]n every action in a district court, the prevailing party . . . shall be allowed reasonable disbursements paid or incurred"). As the prevailing party, Dittmar was entitled to costs and reasonable disbursements.

But Minn. R. Civ. P. 68.03 may alter the recovery of costs and disbursements when there has been a pretrial settlement offer. Minn. R. Civ. P. 68.03(b) provides:

> An unaccepted offer affects the parties' obligations and entitlements regarding costs and disbursements as follows:
>
> (1)  If the offeror is a defendant, and the defendant-offeror prevails or the relief awarded to the plaintiff-offeree is less favorable than the offer, the plaintiff-offeree must pay the defendant-offeror's costs and disbursements incurred in the defense of the action after service of the offer, and the plaintiff-offeree shall not recover its costs and disbursements incurred after service of the offer, provided that applicable attorney fees available to the plaintiff-offeree shall not be affected by this provision.
>
> . . .
>
> (3)  If the court determines that the obligations imposed under this rule as a result of a party's failure to accept

16

an offer would impose undue hardship or otherwise be inequitable, the court may reduce the amount of the obligations to eliminate the undue hardship or inequity.

Respondents made a pretrial settlement offer of $100,000, and the verdict returned by the jury was $81,297.82. The district court refused to apply rule 68 to award respondents costs and disbursements, reasoning that "[b]ecause awarding costs and disbursements to [respondents] would place undue hardship on [Dittmar] or otherwise be inequitable, [respondents] are not entitled to reasonable costs and disbursements." In the memorandum attached to its order, the district court explained:

> [Dittmar] states he currently lives with his father and lacks his own primary residence; he recently obtained temporary full physical custody of his two children; the mother of his children currently has limited involvement in their caregiving and is unlikely to provide financial support in the foreseeable future; and a substantial portion of his award will be used to reimburse his subrogated insurers and pay his counsel's contingent fees and costs. The Court finds [Dittmar's] argument persuasive and concludes that requiring [Dittmar] to pay [respondents'] costs would impose undue hardship or otherwise be inequitable. Accordingly, [respondents'] request for costs and disbursements is denied.

The district court properly applied the rule and its decision was within its discretion.

**Affirmed**.