## JACQUELINE R. ROSENTHAL v. CHARLES P. KOLARS.

231 N. W. 2d 285.

June 20, 1975—No. 45573.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, O. C. Adamson II*, and *Burr B. Markham*, for appellant.

*Rischmiller & Wasche* and *Robert Wm. Rischmiller*, for respondent.

Heard before Rogosheske, Todd, and Scott, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

In this medical malpractice action, a trial jury returned a special verdict finding both plaintiff and defendant causally

negligent and awarding plaintiff damages. Defendant physician appeals from an order of the Hennepin County District Court denying his motion for judgment notwithstanding the verdict or a new trial. We reverse and, as previously ordered on May 28, 1975, conditionally grant plaintiff the option of a new trial limited to the issue of damages.

The facts may be briefly stated. Plaintiff, Jacqueline R. Rosenthal, aged 45, had been a patient of defendant, Dr. Charles H. Kolars, for various medical and emotional problems for 11 years prior to the events giving rise to this action. When hospitalized in 1968 under defendant's care, plaintiff was given a complete physical, including a pelvic examination. During her hospitalization for emotional difficulties in the spring of 1970, defendant performed a general checkup but neither performed a pelvic examination nor palpated plaintiff's abdomen.

In October and December of 1970, plaintiff went to defendant's office, complaining of stomach cramps, bowel problems, back pains, and allegedly of irregular menstrual bleeding. On neither visit was a pelvic examination performed. Defendant's office notes indicate no reference by plaintiff to menstrual difficulties or vaginal bleeding on either occasion. A diagnosis of a "spastic bowel" was made and medication was prescribed.

Plaintiff last saw defendant on January 20, 1971, repeating the same complaints and reporting that the medication was not working. Defendant does not recall whether irregular menstrual bleeding was mentioned. After palpating her abdomen, but not doing a pelvic examination, defendant made the same diagnosis but changed the medication.

Around mid-February, while in Salt Lake City, plaintiff felt a lump in her abdomen but did not seek medical attention. By July, the lump had gotten bigger but she failed to contact defendant. Finally, on August 20, 1971, she went to Hennepin County General Hospital, where, following a complete physical examination and exploratory surgery, her condition was found

to be advanced cancer of the ovaries, which at that point was terminal.

Plaintiff subsequently instituted this action against defendant, alleging that he was negligent in failing to diagnose the cancer at an earlier stage of growth by means of a pelvic examination during the October, December, or January office visits, and that this negligence seriously impaired her chance of survival. At trial, liability of defendant turned on the jury's resolution of this critical and disputed fact issue: Whether during any of those office visits plaintiff advised defendant of cancer symptoms. The jury, resolving the issue in plaintiff's favor, returned a special verdict finding defendant 65 percent and plaintiff 35 percent causally negligent and ultimately assessing damages of $116,000. Defendant's post-trial motions were denied and he appeals.

Defendant assigns three errors. Only one involving the jury's rendering of its special verdict requires discussion, since it alone requires a new trial limited to damages.

Defendant claims error in the trial court's ruling permitting plaintiff's counsel to cross-examine defendant by asking whether he recognized certain medical treatises, authors, doctors, and societies as authoritative on the subject of the detection of cancer. No prejudicial error resulted since defendant did not acknowledge any as authoritative, and none of the substantive content or views of those authorities was revealed to the jury. Such cross-examination was an attempt to lay the foundation for possible impeachment and was not a violation of our holding in Briggs v. Chicago G. W. Ry. Co. 238 Minn. 472, 57 N. W. 2d 572 (1953).

We also find without merit the claim that plaintiff's counsel committed prejudicial misconduct in collectively asking the panel of prospective jurors during voir dire whether they or any close relatives or acquaintances had ever been employed as a claims adjuster for a company which writes medical malpractice insurance. In denying defendant's motion for a mistrial, the trial court found the question proper and not in violation of Rule 31, Code

of Rules for the District Courts of Minnesota. We agree, since the question, as modified by the court in admonishing the jurors to "ignore any reference in that question to malpractice insurance," sought to reveal implied bias beyond a juror's mere interest in a named indemnitor, previously asked by the court.

The difficult issue presented involves certain events occurring at the close of the trial. The trial court submitted the case to the jury on a special verdict form containing a written caution to answer the damage question without reference to the answers to the other questions. He also instructed them on this point.[1] The judge also informed the jury, pursuant to Rule 49.01(2), Rules of Civil Procedure, of the effect of its answers to the comparative negligence questions.[2] When the jury returned after over 4 hours of deliberation and announced it had reached a verdict, the foreman first asked before it was read:

---

[1] The court instructed: "I wish to caution you that unless the Special Verdict gives you instructions on the effect of an answer, or unless my instructions dictate to the contrary, you are to disregard the possible effects that you feel a particular answer might have on the entire result in this case. Based on your answers to these questions, I will determine what the final result will be in the case. An attempt to affect a certain result by inaccurately answering a question may not only result in an injustice, but it may produce a result not intended.

\* \* \* \* \*

"Now, Question Number 6 in this Special Verdict is the damage question. You must answer this question regardless of your answers to the other questions in the Verdict. \* \* \*

"In answering Question Number 6 you are to determine the amount of money which will fairly and adequately compensate Jacqueline Rosenthal for her harm."

[2] Rule 49.01(2), Rules of Civil Procedure, provides: "In actions involving Minn. St. 1971, Sec. 604.01, the court shall inform the jury of the effect of its answers to the percentage of negligence question and shall permit counsel to comment thereon, unless the court is of the opinion that doubtful or unresolved questions of law, or complex issues of law or fact are involved, which may render such instruction or comment erroneous, misleading or confusing to the jury."

'The Jury Foreman: Could I ask you a question first?

"The Court: Okay. Is it about the verdict?

"The Jury Foreman: Yes. You see, this money here, what did you say about that, does she get that?"'

The verdict was then read, finding both parties causally negligent, apportioning 35 percent to plaintiff and 65 percent to defendant, and setting plaintiff's damages at $75,000. In the ensuing exchange between the court and jury foreman, it became clearly evident that some of the jurors thought plaintiff would be awarded the full amount of damages stated, that is, $75,000, on the basis that the percentage of fault had nothing to do with the damages. When the court corrected the jury's confusion by pointing out that plaintiff would receive only 65 percent of $75,000, the response was:

"The Jury Foreman: That isn't what we thought.

\* \* \* \* \*

"The Jury Foreman: Well, that is not our true figure then."

The jury was sent out to await further instruction from the court. In chambers, the court, relying on Rule 49.01(2), decided, over the vigorous objection of defense counsel, to reinstruct the jury solely on the effect of the comparative negligence law on their answer to the damage question. No repeated warning, as requested by defense counsel, was given that they were not to speculate on the possible effects a particular answer might have on the final disposition of the case. The jury was sent out for further deliberations and returned in about 15 minutes with the same negligence apportionment but increasing the damage award to $116,000.

We are persuaded that the actions of the jury constituted misconduct on its part, and the court's efforts to correct those actions fell short of what was required under the circumstances. In our view, the limited reinstruction by the court only served to encourage the jury to disregard the warnings against attempting to secure justice for plaintiff by its applying the comparative

negligence law to the damages awarded. As such, we feel the award of $116,000 does not reflect an unassailable answer by the jury as to what would fairly and adequately compensate plaintiff without regard to any of the other special verdict answers. Under the circumstances, the jury's misconduct of going beyond its proper function in answering the special verdict prejudiced defendant and forces us to reverse the judgment.

This is so despite our recent decision of Steinhaus v. Adamson, 304 Minn. 14, 228 N. W. 2d 865 (1975), where a similar occurrence took place and where we held it was not prejudicial. That case is distinguishable on the basis that the trial judge adequately reinstructed the jury to answer the negligence and damage questions without regard to one another, once the jury's "confusion" became apparent.[3]

In order to attempt to correct the error that took place, we remand the case to the Hennepin County District Court, where plaintiff shall have the option of either (1) accepting a new trial limited solely to the issue of damages, or (2) accepting as her recovery in this action the amount of damages as originally rendered by the jury ($75,000) reduced by the 35-percent negligence figure. We offer this latter course because it is fairly clear

---

[3] In Steinhaus v. Adamson, 304 Minn. 14, 18, 228 N. W. 2d 865, 868 (1975), the court's reinstructions included: "Well, the damages were supposed to be figured as a separate item without any regard to the percentage, so this [the answer to the damage question] really isn't what you had in mind then. * * *

* * * * *

"* * * I think you were trying to arrive at a dollar figure instead of answering the questions the way you were supposed to. I think what I am going to do is send you back to the jury room and start over again, and don't try to figure out how much the plaintiff is going to get. You figure out the percentages on the negligence and figure the total amount of damages and let me do the mathematics after that. See the trouble is I don't know now just what you did mean, and don't want to take part in the decision either. This is supposed to be your decision."

from the record that the jury intended an award of $75,000, but no such assurance can be given about the subsequent increase to $116,000.

Reversed and remanded for further proceedings consistent with this opinion.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.