Thomas SABRASKI, Respondent,

v.

NORTHERN STATES POWER COMPANY, Appellant,

Kathleen A. Kowitz, Appellant.

No. 51078.

Supreme Court of Minnesota.

April 24, 1981.

Rosenmeier & Simonett, Little Falls, for appellant Northern States Power Co.

Quinlivan & Williams, St. Cloud, for appellant Kowitz.

Reichert, Wenner, Koch & Provinzino, St. Cloud, for respondent.

SCOTT, Justice

Defendants appeal from an order of the Benton County District Court adopting a so-called "second verdict" and denying their alternative motion that the court adopt the answers originally given by the jury in its "first verdict" or grant a new trial. Having determined that the circumstances disclosed by the clerk of court under oath in response to questions by the parties' attorneys and by the foreperson of the jury in response to questions of the trial court compel the conclusion that neither verdict can stand, we reverse the order and remand for a new trial.

Plaintiff sustained injuries through contact with a powerline maintained by defendant Northern States Power Company on the property of defendant Kowitz and brought this negligence action against them. At trial, the court submitted a special verdict to the jury after instructing them that they must determine whether each party had been causally negligent and, if so, the extent to which his negligence was a direct cause of the accident. He also instructed the jury that plaintiff could not recover from a defendant if plaintiff's own negligence was as great or greater than the negligence of that defendant. The jury began deliberations at 4:45 p.m. November 27, 1979, and the parties' counsel agreed that the verdict could be returned to the clerk of court in the absence of counsel and the trial judge.

About 9:30 p.m. the jury returned to the courtroom and informed the clerk that they wished to give him their verdict. In this "first verdict" the jury had determined that plaintiff had sustained the damages of $127,300 and that all parties had been causally negligent, apportioning 45% of that negligence to plaintiff and 27½% to each defendant. The clerk accepted the verdict, read it to the jury, and asked them, "Is this your verdict?" They responded affirmatively. He then asked, "So say you all?" They again responded affirmatively, but one juror immediately stated that plaintiff would receive 55% of the damages awarded. The clerk responded that he doubted this, but did not know for sure and could perhaps find out. Other jurors were disturbed by his reply and told him that they "want[ed] to know for sure." The clerk then attempted without success to telephone the trial judge, another district judge, and an attorney who had represented one of the defendants. He telephoned the plaintiff's attorney, asked the effect of the comparative negligence apportionment, and was told that the attorney felt that the plaintiff could not recover but was not sure. The clerk then telephoned another attorney not connected with the case, who in turn conferred with his son and then informed the clerk that the plaintiff could not recover.

The clerk so informed the jury and then successfully contacted the trial judge. The judge asked if the jury desired further instructions, to which the clerk responded that they did not, but "just want to know if that verdict means that the plaintiff could get the 55%." The trial judge told the clerk that plaintiff would not recover, and the clerk so informed the jurors. They then asked if he could tear up the verdict form and give them another, to which he responded that he could not but that "I suppose you can go and change it.".

The jury went back into the jury room, returning approximately 20 minutes later after changing their answers to assess plaintiff's damages as $100,000 and to determine that his causal negligence was 30% and that of each defendant was 35%. The clerk again read the verdict and asked the jury if it was their verdict, to which they again responded affirmatively.

On learning of this sequence of events the next morning, the trial judge requested the jurors to report back at noon and questioned them in an attempt to establish which verdict had been based on his instructions and was the jury's "true verdict." All said that it was the second. Plaintiff subsequently moved that the court adopt those answers, while defendant moved that the court accept the jury's first answers, and each alternatively sought a new trial. The trial court granted plaintiff's motion that it adopt the so-called "second verdict," ordered judgment for plaintiff for $70,000 and denied defendants' motions.

On appeal defendants urge that the trial court was required to accept the answers first given by the jury because that verdict was "complete" within the meaning of Minn.Stat. § 546.24 (1980), the clerk was required by that statute "forthwith" to record the verdict, and the jury's function was at an end, rendering their subsequent actions irrelevant. Although the argument is not without force, we are not persuaded that the jury had in fact completed its deliberations in spite of the affirmative answers they gave to the clerk's questions since, in practically the same breath, they

revealed their misunderstanding about the effect of their answers.

At the same time our prior decisions require the conclusion that the actions of both the clerk and the judge, although innocent, created a situation of sufficient gravity that it must be presumed to have been prejudicial. *See Cronquist v. City of Minneapolis*, 258 Minn. 30, 102 N.W.2d 512 (1960). We are also satisfied that the action of the jury in revising its answers to the crucial questions about the comparative negligence of the parties was misconduct, the effect of which could not be removed by the trial court's subsequent attempt to determine that the revised answers were in fact the jury's "true verdict." *See Rosenthal v. Kolars*, 304 Minn. 378, 231 N.W.2d 285 (1975). The effect of this misconduct is obvious.[1]

Reversed and remanded for a new trial.

SIMONETT, J., took no part in the consideration or decision of this case.

---

1. It seems more than coincidental that the jury's revised verdict awarded plaintiff $70,000 almost exactly the amount the jurors had thought he would receive under their first answers.