Stephanie A. Ball, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, Minnesota (for appellants Paige Anderson, et al.)
W. Paul Otten, Otten Law Offices, Burnsville, Minnesota (for plaintiff intervenor State of Minnesota, Department of Human Services)
Timothy J. O'Connor, William L. Davidson, João C.J.G. de Medeiros, Thomas J. Evenson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota (for respondents ISD 696, et al.)
Robert C. Barnes, McCarthy & Barnes, PLC, Duluth, Minnesota (for respondent Hailey Salo)
Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Smith, Tracy M., Judge.
ROSS, Judge *914 A school bus collided with a car, killing one of the car's passengers and severely injuring the car's other passenger and the driver. The injured passenger sued the drivers of both the car and the bus along with the school district that employed the bus driver. The state intervened as a plaintiff. The jury first returned a verdict inconsistently finding in one answer that the bus driver's negligence did not directly cause the collision and in another that it did. The district court sent the jury out to deliberate further to correct the defective verdict and the jury's amended verdict found that both drivers directly caused the collision. The district court received the amended verdict, and the school district and bus driver moved for judgment as a matter of law, a new trial, dismissal of the state's claim, and an order limiting its damages under Minnesota Statutes, section 466.04 (2018). The district court limited the state's damages to the statutory maximum for municipalities and denied all other motions. The injured passenger argues on appeal that the school district waived the right to limit its damages under section 466.04 by purchasing insurance coverage exceeding the statutory cap. The school district and bus driver argue in their cross-appeal that they are entitled to judgment as a matter of law or a new trial based on the original verdict and for other reasons. We affirm.
FACTS
In October 2009, a school bus operated by Ely Independent School District 696 (ISD 696) struck a Ford Taurus in an Itasca County intersection. The collision killed the car's front-seat passenger, Emerald Foss, and it severely injured driver Hailey Salo and rear passenger Paige Anderson. Bus driver Jay Poshak was employed by and working for the school district at the time of the crash. Two lawsuits commenced.
In 2011, Linda Foss, trustee for the next of kin of Emerald Foss, sued ISD 696 and Poshak. Foss did not sue Salo, instead entering into a Pierringer agreement with Salo and a covenant not to sue. ISD 696 and Poshak brought a third-party claim against Salo. At a pretrial hearing, Salo's attorney stated that she "would agree to be bound by the liability determination in this file" and that, if the verdict found her more negligent than Poshak, she could not pursue a claim against him. Salo was not present at trial. The jury found that Poshak was not negligent and that Salo's negligence was the only direct cause of the collision.
In 2015, passenger Anderson, her mother Teresa Dubovich, and her stepfather Michael Dubovich, sued ISD 696, Poshak, and Salo. They alleged that Poshak and Salo were negligent and that ISD 696 was vicariously liable for Poshak's negligence. The state sought to intervene, ostensibly to recover Medicaid funds it paid on Anderson's behalf to treat injuries she sustained in the collision. The state sent a notice of intervention to ISD 696 and Poshak *915 but did not file it or its civil complaint in the district court. ISD 696 and Poshak initially objected to the intervention, but soon withdrew their objection. The district court joined the state as a plaintiff intervenor.
Salo filed a cross-claim against ISD 696 and Poshak, alleging that Poshak was negligent and that ISD 696 was vicariously liable for his negligence.
ISD 696 and Poshak moved for summary judgment, arguing that Salo's cross-claim should be dismissed and that she should be prevented from arguing that either Poshak or ISD 696 was liable because she agreed to be bound by the liability determination in the Foss case in any subsequent action. ISD 696 and Poshak alternatively argued that Salo's agreement to be bound by the jury's liability determination in the Foss suit prevented her from claiming that ISD 696 or Poshak was liable. The district court granted ISD 696 and Poshak's motion to dismiss Salo's cross-claim but held that Salo could attempt to prove at trial that Poshak was more at fault than she.
The jury heard the evidence and returned a verdict finding both Salo and Poshak negligent but inconsistently finding in one answer that only Salo's negligence directly caused the collision and finding in a different answer that both Salo's and Poshak's negligence directly caused the collision, apportioning Poshak's fault at 10% and Salo's at 90. The district court discovered the inconsistency while reading the verdict aloud. The judge paused the reading and noted the problem for the attorneys, and then she completed reading the verdict. The judge then asked the jury as a whole if it was their verdict, and the jurors answered, yes. The judge then excused the jurors from the courtroom, but did not discharge them from the case. After discussing options to resolve the inconsistency-each side urging the court to receive the verdict and interpret it in a way that favored that side-the judge called the jurors back into the courtroom and instructed them to deliberate further. She told them to pay attention to the apportionment-of-fault question.
The jury left to deliberate. Nineteen minutes later, the jury foreperson sent a note to the judge:
We are confused as to what we are asked to do.
We did not believe Mr. Poshak's negligence was a direct cause.
[H]ow would you like us to fix #5 [the apportionment of fault question]?
Are we allowed to cross it off after re-reading the instructions? (the %'s in #5)
The judge discussed with the attorneys how to answer. The judge then responded with a typewritten statement: "Yes, you are allowed to change your answers."
The jury deliberated further and soon returned an amended verdict. Contrary to what the foreperson's note had suggested, the jury chose not to change its finding on the apportionment-of-fault question. It instead changed its finding as to whether Poshak's negligence was a direct cause, switching its answer from "no" to "yes."
ISD 696 and Poshak made various motions after the verdict, including a request for judgment as a matter of law, for a new trial, for an order reducing the damages, for dismissal of the state's claim, and for an order vacating the judgment. The district court denied all of ISD 696 and Poshak's motions except that it granted in part and reserved in part the motion to cap damages. Anderson unsuccessfully sought permission to move to reconsider.
Anderson appeals the district court's decision to limit the damages owed by ISD 696, and ISD 696 and Poshak cross-appeal.
*916 ISSUES
I. Did the district court abuse its discretion by allowing Salo to argue apportionment of fault in the face of her agreement to accept the Foss jury's fault determination?
II. Did the district court err by receiving the jury's amended verdict instead of its original, inconsistent verdict that was read aloud in court and acknowledged by the jury?
III. Did the district court abuse its discretion by denying ISD 696 and Poshak a new trial based on the instructions it gave the jury after it sent the jury out to fix the inconsistent verdict?
IV. Did the district court err by entering judgment in favor of Anderson on her claim for medical damages after the state failed to file its intervention notice or, alternatively, after its attorney left during trial and failed to prosecute its medical-damages claims?
V. Did the district court err by limiting ISD 696's liability to the statutory maximum for municipalities under Minnesota Statutes, section 466.04 ?
ANALYSIS
ISD 696 and Poshak raise four issues on appeal. They argue that the district court erred by allowing Salo to argue apportionment of fault after having stipulated to accept the Foss jury's fault determination; by sending the jury out for further deliberations after the jury returned its verdict and the district court read it aloud and garnered the jury's affirmation; by denying them a new trial based on erroneous jury instructions; and by entering judgment in favor of Anderson on her claim for medical damages after the state failed to file its intervention notice. Anderson argues that the district court erred by limiting ISD 696's liability to the statutory maximum. None of these arguments succeed. We discuss each in turn.
I
ISD 696 and Poshak argue that the district court abused its discretion by not collaterally estopping Salo from arguing apportionment of fault. We will overturn a district court's decision not to apply collateral estoppel only if it abused its discretion. Colonial Ins. Co. of Cal. v. Anderson , 588 N.W.2d 531, 533 (Minn. App. 1999). A party is estopped if it participated in a prior adjudication, the adjudication resolved an identical issue in a final judgment on the merits, and the party had a full and fair opportunity to be heard. Id.
ISD 696 and Poshak argue that the district court abused its discretion by not estopping Salo because Salo had agreed to be bound by the jury's fault determination in the Foss case. Parties may agree that issues determined in one action will determine those issues in a later action. Bogenholm by Bogenholm v. House , 388 N.W.2d 402, 405 (Minn. App. 1986), review denied (Minn. Aug. 13, 1986). But the district court accurately determined that Salo agreed to be bound only by the Foss jury's determination of fault in Foss's own action for damages, not in other actions. In a pretrial hearing in the Foss case, Salo "agree[d] to be bound by the liability determination from [the Foss] trial," and the release explicitly excluded "any claims which might be brought by anyone other than the [r]eleasing [p]arty." This exclusion establishes that she agreed to follow the Foss litigation liability determination only as applied to her own potential claims against Poshak and ISD 696. The district court therefore did not abuse its discretion by allowing Salo to argue for apportionment of fault in the Anderson case.
*917 II
ISD 696 and Poshak argue that the district court erroneously denied their motion for judgment as a matter of law because, according to ISD 696, the district court should have disregarded the jury's amended verdict and attempted to interpret and apply the jury's original, inconsistent verdict. ISD 696 maintains that the district court was compelled to accept the jury's inconsistent verdict after the district court read the verdict aloud and received a "Yes" answer to its question to the jury, "[I]s this the verdict of the jurors ...?" At that moment, the argument goes, the district court had the statutory duty to discharge the jury, the jury was effectively divested of subject-matter jurisdiction over the case, and the district court lost its authority to direct the jury to deliberate further to remedy the flawed verdict.
ISD 696's argument relies on, and we must interpret, the following statute:
When the verdict is given, and is such as the court may receive, the court administrator shall immediately file said verdict in open court, and read it to the jury, and inquire of them whether it is their verdict. If any juror disagrees, the fact shall be entered in the minutes, and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury shall be discharged from the case. The court administrator shall forthwith record such verdict in full in the court minutes.
Minn. Stat. § 546.24 (2018). ISD 696 emphasizes the phrase, "but if no disagreement is expressed, the verdict is complete, and the jury shall be discharged from the case," in urging us to hold erroneous the district court's allowing the jury to deliberate to amend its inconsistent verdict. The argument infers from the terms "shall" and "immediately" that the statute creates a strict series of unalterable events. Once "given," the verdict must be filed; once it is filed, it must be read; once it is read, the court must inquire of the jury as a whole; and once the court inquires, the jury must be discharged immediately if all jurors agree to the verdict. This inflexible construction does not withstand careful analysis.
The issues of whether the district court properly denied the posttrial motion for judgment as a matter of law and its construction of the verdict statute are both questions of law that we review de novo. Christie v. Estate of Christie , 911 N.W.2d 833, 838 n.5 (Minn. 2018) ; Cocchiarella v. Driggs , 884 N.W.2d 621, 624 (Minn. 2016). When statutory text is unambiguous, we follow its plain language. Amaral v. Saint Cloud Hosp. , 598 N.W.2d 379, 384 (Minn. 1999). The legislature expects courts to construe a law so as "to give effect to all its provisions," however, and when "the words of a law in their application to an existing situation are [not] clear and free from all ambiguity," the legislature invites courts to look for guidance elsewhere, like in "the former law, if any, including other laws upon the same or similar subjects." Minn. Stat. § 645.16 (2018). ISD 696's lengthy argument about the meaning of the statute, including a useful exposition of its history dating back from before Minnesota achieved statehood, implicitly concedes that section 546.24 is not "free from all ambiguity" as applied to our situation. Our de novo review of the provision in the context of companion statutory provisions leads us to affirm the district court's decision to send the jury back to fix its inconsistency.
The jury's answers in the originally presented verdict, which ISD 696 says are binding, are obviously inconsistent. The jury answered "No" to the special verdict inquiry, "Was the negligence of Jay Poshak a direct cause of the October 9, 2009 *918 accident?" But it answered "10%" to the inquiry, "Taking all of the negligence that contributed as a direct cause of the October 9, 2009 accident to be 100%, what percentage do you attribute to Jay Poshak?" Each answer contradicts the other, since Poshak cannot be both 0% and 10% directly negligent. The issue then becomes: what should have happened once the district court became aware of the inconsistency? The district court caught the inconsistency immediately while it was reading the verdict aloud, paused to call the attorney's attention to the inconsistency, completed reading the verdict aloud, asked the jury as a whole if the verdict was theirs, excused the jury so the court could discuss with the attorneys how to deal with the inconsistency, and finally recalled the jury and sent it out to remedy the inconsistency by amending its verdict. ISD 696 believes that the district court erred by sending the jury to fix the inconsistency because the jury as a whole had already indicated that the verdict was theirs. We do not agree.
ISD 696 builds its interpretation of the single line within section 546.24 on an 1874 supreme court case, Tarbox v. Gotzian , which interpreted an earlier but similar version of the statute. 20 Minn. 139, 20 Gil. 122 (Minn. 1874). The reasoning in Tarbox mirrors ISD 696's reasoning. In that case, the jury had returned a general verdict but failed to answer two special-verdict questions. Id. at 142, 20 Gil. at 126. The clerk read the verdict aloud to the jury and, "before the jury had been asked if it was their verdict," one of the lawyers noticed the deficiency and alerted the court. Id. The district court sent the jury back out to answer the additional questions. Id. On appeal, the defendant challenged the validity of the verdict as to the special questions, arguing that the district court lost the authority to send the jury out to deliberate again as soon as the jury had rendered its first verdict. Id. The Tarbox court disagreed, and its reasoning is the foundation of ISD 696's argument. It said that the district court was not without power to send the jury out to deliberate more because the verdict was not complete; that the verdict was not complete because the jury was not functus officio (an entity whose power has ended because it accomplished its purpose); and that the jury was not functus officio because it had not yet been asked whether, and affirmed without dissent, that the verdict was really theirs. Id . at 142-43, 20 Gil. at 126-27. The supreme court repeated this same view of the statute 20 years later in Aldrich v. Grand Rapids Cycle Co. , 61 Minn. 531, 63 N.W. 1115, 1115 (1895).
The inflexibility of the functus officio principle is perhaps most clearly exemplified in an even earlier case. In Steele v. Etheridge , after "[a]ll the jurors had ... agreed upon and consented to [the] verdict," the jury was polled and "one of the jurors retracted, or attempted to retract" his agreement. 15 Gil. 413, 415 (Minn. 1870) (Gilfillan summary). But the Steele court concluded, "The time for polling the jury had passed, and the verdict was recorded, and the jury was functus officio , before appellant requested the jury to be polled." Id . The Steele court's approach was rigid: "The polling of the jury after the verdict was recorded was of no effect, and although upon such polling one of the jurors expressed his dissent from the verdict as previously rendered and recorded, it must be disregarded." 15 Minn. 501, 511, 15 Gil. at 422. The Tarbox , Aldrich , and Steele line of seemingly inflexible functus officio reasoning seems to demand a holding in favor of ISD 696 that, once the jury here agreed to the verdict without dissent after the reading of it, their role officially ended and nothing they did afterward has any legal force. But we hold otherwise.
*919 We reject ISD 696's functus officio argument because a premise in this line of early cases has been implicitly superseded by a slight change in the wording of the statute, as recognized by the supreme court in Weatherhead v. Burau , 238 Minn. 134, 55 N.W.2d 703, 705 (1952). The Weatherhead court considered the same functus officio argument that the Steele court addressed: "Appellant contends that M.S.A. § 546.24 should be interpreted as making the recording of a verdict mandatory when the jury answers the clerk's inquiry affirmatively and that therefore the subsequent poll was ineffective ...." Id . at 704. But the Weatherhead court noticed that, despite the language in section 546.24 continuing to declare (as it still declares today) a verdict to be "complete" upon the jury's assent after the reading of it, a different part of "[s]ection 546.24 was amended in 1949." Id . And it said, "When this amendment is read in conjunction with § 546.16 it is clear that its purpose was to authorize a poll of the jury after the clerk's inquiry but before the recording of the verdict." Id . at 705. In other words, the supreme court has already rejected ISD 696's contention, holding that section 546.24 should not be interpreted to end the jury's functional purpose and render the verdict complete when the jury affirmatively answers the clerk's or court's inquiry about the verdict.
The corresponding section that includes the polling provision remains substantively the same today as it was at the time of Weatherhead :
Before the verdict is recorded either party may require the jury to be polled, whereupon the court administrator shall ask if each juror's verdict is the same as the announced verdict. If any answer in the negative, the jury shall be sent out for further deliberation. If the verdict be defective in form or insufficient, it may be corrected under the advice of the court, or the jury may be again sent out.
Minn. Stat. § 546.16 (2018). In addition to clarifying that the statute now places the polling after the reading and assenting in the verdict-receiving process, the Weatherhead court also offered guidance consistent with what the district court chose to do in this case: "The question of whether ... the jury should have been sent out for further deliberation is not before us, but, having considered the question, we are of the opinion that ... the better reasoning and the weight of authority is that ... the jury should be sent out for further deliberation." Weatherhead , 55 N.W.2d at 705-06. In short, the verdict statutes do not mandate the jury's discharge automatically at their assent to the verdict. See Id . ; see also Sabraski v. N. States Power Co ., 304 N.W.2d 635, 636 (Minn. 1981) (declining to deem the verdict final even after the clerk accepted the verdict, read it to the jury, asked them if it was their verdict, received an affirmative response, then asked, "So say you all?" and received another affirmative response). And in this case, the district court never polled the jury until after it followed the approach directed by Weatherhead in sending the jury back out for more deliberation and then receiving the jury's corrected verdict.
We add that ISD 696's inflexible approach does not sufficiently regard the district court's discretion to shepherd the jury process or its authority to determine when the verdict is ready to be received. The only qualitative event listed in section 546.24 leading to "the jury [being] discharged from the case" is the jury's presentation of a verdict that "is such as the court may receive." This "is such as" conditional language recognizes the district court's power not to receive a defective verdict until its defect is cured. And as the companion section indicates, the district court will exercise that power when it concludes *920 that the verdict that was presented by the jury but not yet received by the court is formally or substantively infirm: "If the verdict be defective in form or insufficient, it may be corrected under the advice of the court, or the jury may be again sent out." Minn. Stat. § 546.16. This provision authorizing the district court either to direct the repair of a defective verdict or send the jury out for more deliberation does not explicitly or implicitly limit the district court to any particular moment before officially receiving the verdict when it must accomplish its defect-curing duty.
The district court followed the correct process here. It never expressly nor effectively received the original verdict in the sense of accepting it as answering the questions presented for trial. As soon as it noticed the inconsistency, the district court interrupted its reading of the verdict and alerted the attorneys to the problem. And after completing the reading and confirming that all jurors had intended it as their verdict, the district court never indicated that it was receiving it: "What I'm going to do is excuse the jurors at this time. There's an issue I need to address with the lawyers." In a similar circumstance and applying identical statutory language, the Oregon Supreme Court described the relationship between an inconsistent verdict and the court's duty to avoid receiving it this way: "The award of nominal general damage and substantial special damage involved an inconsistency. ... [T]hey violated the instructions of the court. The first verdict was therefore not 'such as the court may receive.' We could not reinstate the so-called first verdict because it never became a verdict at all." Hall v. Cornett , 193 Or. 634, 240 P.2d 231, 236 (1952) ; see also Holmboe v. Morgan , 69 Or. 395, 138 P. 1084, 1085 (1914) ("It [is] not the verdict of the jury until it [is] received by the court and filed with the clerk."). Counsel for ISD 696 used similar language when he urged the district court to fix the verdict rather than send the jury back to deliberate: "I think they've returned a verdict and it should be received by the court."
ISD 696 would have us hold that the district court's reading of the verdict and the jury's assent to it constitutes the court's receiving it even though the court had no intention of receiving it in that condition. ISD 696 acknowledges that the originally presented verdict's inconsistency is the type of defect for which the district court might have, under the terms of section 546.16, exercised its authority by sending the jury back to render a consistent verdict. But it insists that the statute afforded only a narrow window in which the district court could exercise that authority. At oral argument, ISD 696's counsel explained colloquially that this window opened when the bailiff handed the court the verdict and closed seconds later before the court began reading it aloud: "We all see in the movies: jury comes back, foreperson hands the verdict form to the bailiff, bailiff takes it up to the judge .... And the judge is special-gets to see it before everybody else in the ... courtroom gets to see it. That's an opportunity for the judge ... to see the verdict and see if there [are] any inconsistencies." ISD 696's construction of the statute allows for no other moment when the district court could have exercised its authority to send the jury back for further deliberation in the face of a defective verdict. We agree that the statute allows for the process that counsel described well, but we conclude that the statute does not confine the district court inflexibly to it.
Based on the caselaw and our reading of the statutes together, we hold that section 546.24 did not compel the district court to receive as final a jury's inconsistent verdict.
*921 Nor was the district court prevented from sending the jury out to deliberate further under section 546.16 to remedy the inconsistency, even though the district court had read the verdict aloud and heard the jury's affirmation that it was their verdict. The district court therefore was not bound to grant ISD 696's motion for judgment as a matter of law based on the original, substantively defective verdict.
III
ISD 696 and Poshak argue next that the district court abused its discretion by denying their motion for a new trial. We will overturn a denial of a motion for new trial only if the district court abused its discretion. Moorhead Econ. Dev. Auth. v. Anda , 789 N.W.2d 860, 892 (Minn. 2010). ISD 696 bases the motion on its charge that the district court interfered with the jury's fact-finding role by not directly answering the jury's question about how it might repair its inconsistent verdict. When a district court sends the jury back to deliberate more, it has "broad discretion to amplify and modify, as well as merely repeat [its] initial instructions," but it cannot interfere with the jury's role in determining issues. Meinke v. Lewandowski , 306 Minn. 406, 237 N.W.2d 387, 392 (1975). We do not see the interference that ISD 696 alleges.
We believe the district court acted within its discretion and avoided interfering with the jury when it answered the questions, "How would you like us to fix [special verdict answer number] 5? Are we allowed to cross it off after re-reading the instructions?" ISD 696's position on appeal, which is that the district court should have said, simply, yes, differs entirely from its position during trial. When the district court finally asked all counsel, "What about just saying ... yes, you are allowed to correct any answers," the exchange with counsel jointly representing ISD 696 and Poshak went like this:
Counsel for ISD 696: Okay.
The court: How about that?
Counsel for ISD 696: I'm acceptable. Yes. That's acceptable.
After one minor change, the district court advised the jury, "Yes, you are allowed to change your answers." Having expressly agreed with the district court's wording of the answer, ISD 696 and Poshak have no basis to challenge the answer as improper on appeal. See State v. Beaulieu , 859 N.W.2d 275, 278-79 (Minn. 2015) (noting that a failure to call attention to an error in district court constitutes forfeiture); Leiendecker v. Asian Women United of Minn. , 895 N.W.2d 623, 631 n.3 (Minn. 2017) (applying the Beaulieu analysis to civil litigation).
And even if ISD 696 and Poshak had objected to the language, the district court's answer to the jury's inquiry reflects no abuse of discretion. Rather, it affirms the broad authority of the jury to make any finding on any issue of fact and it recognizes that this authority continues until the district court effectively receives the verdict. This comports with the supreme court's holding in Meinke . In Meinke , as here, the jury returned a special verdict with inconsistent answers. 237 N.W.2d at 390. To correct the inconsistency, the trial judge directed the jury to strike its response to a specific question. Id. at 392-93 n.6. The supreme court held that the district court's instruction impermissibly interfered with the jury's fact-finding role. Id. at 392-93. The district court here chose instead not to specify which of the inconsistent answers the jury should alter, leaving the jury free to choose for itself. ISD 696's argument is essentially this: because the jury's question had suggested to the district court which direction the jury was headed, the *922 district court was bound to answer in a way that openly endorsed the jury's leaning. The argument supposes that, by not endorsing that route, the district court was inadvertently signaling that it was discouraging it. To the contrary; the district court's endorsement of any route that is implied or even expressed in a communication from the jury foreperson risks becoming the same error the Meinke court corrected. A note from the foreperson has no binding significance on the outcome. It is not tantamount to a verdict stating the completed findings of the jury, any one of whose members has the right to change her mind on any point whether or not the point has been reflected in a note to the judge. By answering the question as the district court did, refusing to suggest its endorsement of any path, the jury was free to choose how to fix the inconsistency. This is not impermissible influence because it is not influence at all.
IV
ISD 696 and Poshak argue next that the district court erred by denying their motion for judgment as a matter of law against the state, which ISD 696 maintains never properly intervened. ISD 696 adds that, even if the state did intervene, the state called no witnesses and offered no testimony or documents establishing any evidence to support the state's claim to reimbursement of Medicaid payments made on Anderson's behalf. We review a district court's decision to deny a motion for judgment as a matter of law de novo. Christie , 911 N.W.2d at 838 n.5.
ISD 696's argument on this issue highlights the most peculiar circumstances of this case. The record suggests that the state failed to take the prescribed steps to intervene and that, after the district court allowed its intervention, the state failed to participate in a manner that secured the state's interest in the outcome. In the end, however, these deficiencies do not require us to reverse the judgment rendered in Anderson's favor.
To intervene, a person must serve on all parties and file with the court a notice of intervention along with a pleading stating "the nature and extent of every claim or defense as to which intervention is sought and the reasons for the claim of entitlement to intervention." Minn. R. Civ. P. 24.03. ISD 696 asserts that, although the state served its intervention papers on the named parties, it never filed them in the district court. The record supports the assertion. But the rule 24.03 also defines the process for a named party to object to the intervention of any "party seeking to intervene," and ISD 696 and Poshak, who did initially object to the state's intervention, expressly withdrew their objection and never complained again until the trial was over. And the district court had filed an unopposed order granting the intervention. In light of the named parties' notice of and acquiescence in the district court's decision, we have no basis on which to now find any error in the district court's intervention order.
We reject ISD 696's assertion that the state's serving but not filing its intervention notice and complaint is a subject-matter deficiency that can be raised at any time. We can assume without deciding that ISD 696 correctly asserts that failure to intervene undermines a party's standing. See Courtney v. Babel , 293 Minn. 328, 198 N.W.2d 566, 567 (1972) (noting that, until a non-party sought intervention, they had no standing to participate in the proceeding). And we can also assume without deciding that ISD 696 correctly asserts that the lack of standing is a jurisdictional failing that can be raised at any time. See In re Welfare of Mullins , 298 N.W.2d 56, 61 n.7 (Minn. 1980) (noting that standing *923 can be challenged at any time). The district court's order conferring intervention status on the state cured any rule-based deficiency that might otherwise have prevented the state's standing or the court's jurisdiction over the issues for which the state's involvement may matter.
Most unusual is the state's lack of participation after it became a party. The nature of the state's interest is clear: the state has the right to recover directly from a tortfeasor the cost of Medicaid payments made through the state. 42 U.S.C. § 1396k(a)(1)(A) (2012) (requiring Medicaid applicant to "assign to the State any rights, of the individual ... to payment for medical care from any third party"); Minn. Stat. § 256B.056, subd. 6 (2018) ("By accepting or receiving assistance, the person is deemed to have assigned the person's rights to medical support and third-party payments as required by title 19 of the Social Security Act."). ISD 696 asserts, and the state does not contest, that the state did not introduce any evidence whatsoever proving the amount of benefits to which the state claims entitlement based on its Medicaid payments on Anderson's behalf. ISD 696 also asserts, and the state does not contest, that counsel for the state chose to be absent during a substantial portion of the trial, seeking the court's leave. Counsel for the state urges on appeal that its intervention was essential to protect the state's significant interest in the outcome. Although the state's significant interest is clear, neither the state nor the record indicates what the state did to protect that interest. Indeed, the district court seemed perplexed by the state's lack of involvement, which resulted in the district court's unusual and unchallenged decision to prohibit the state from making a closing argument:
And I would just note for the record that I did rule previously that Mr. Otten [counsel for the state] is not going to be allowed to do a closing statement and the reason I made that ruling, if it wasn't clear before, is because he has offered no independent evidence, he has offered no proof of what the state has paid, and when this case started, I allowed him to do an opening statement because that's how it was represented to me that the case would be presented, but now based on what's happened, Mr. Otten has, in my opinion, allowed Ms. Ball, [counsel for Anderson] through the plaintiffs' claim, to prove his part of any damages and, therefore, I don't find he has any distinct position anymore and should not be allowed to make a separate argument.
ISD 696 argues that the judgment against it is infirm because of the state's failure to properly intervene, the state's failure to introduce any evidence supporting its claim to recovery of Medicaid payments, and Anderson's lack of standing (as the result of her assignment to the state) to any damages belonging to the state related to those Medicaid payments. The argument does not lead us to reverse the judgment. We have already held that the state is in fact a party through the district court's unopposed intervention order. And we cannot reverse a judgment in favor of the state because the state is not named in the judgment, which identifies only Anderson and her parents as judgment creditors.
Nor can we reverse the judgment favoring Anderson based on ISD 696's argument that Anderson assigned to the state her claim to medical costs. Fatal to ISD 696's argument is its own accurate description of the state's failure to prove any right to Medicaid payments. ISD 696 does not contest the jury's finding that Anderson's past medical costs are $ 2,071,627. The judgment in Anderson's favor against ISD
*924 696 and Poshak rests on that finding and the finding that Poshak's negligence was a direct cause of the collision. As ISD 696 explains, Anderson has a rightful claim to recover only those medical costs that were not covered by the state's Medicaid payments. But not only did the state fail to prove the amount of Anderson's medical costs paid through Medicaid in support of its claim to damages through assignment, ISD 696 likewise failed to prove the amount of Anderson's medical costs paid through Medicaid in support of its argument that Anderson lacks standing to claim those damages.
We add that ISD 696's prejudice is unclear. The argument raises a hypothetical dispute between Anderson and the state over Anderson's duty to apply her judgment to offset her Medicaid benefits. But given ISD 696's failure to establish what part of the judgment, if any, arises from the state's assigned claim, the argument fails in any event.
V
Anderson contests the district court's conclusion that ISD 696 did not waive the statutory damages cap. A school district is a "municipality" for the purposes of Minnesota Statutes, section 466.04, and section 466.04 limits the tort liability of municipalities to $ 1,500,000 "for any number of claims arising out of a single occurrence." Minn. Stat. § 466.04, subd. 1(7) (2018). But an exception to this cap exists: "The procurement of such insurance constitutes a waiver of the limits of governmental liability under section 466.04... to the extent that valid and collectible insurance ... exceeds those limits and covers the claim." Minn. Stat. § 466.06 (2018). Based on the statutory cap, ISD 696 and Poshak moved the district court to limit their liability. Anderson opposed the motion on her assertion that the school district had multiple insurance policies that might apply and that include terms that do not meet the statutory exception. The district court considered and rejected Anderson's argument based on the evidence:
In its ... Memorandum of Law Opposing Defendants ISD 696 and Jay Poshak's Motion ..., Plaintiffs argue that Defendant ISD 696 may have waived the $ 1,500,000.00 statutory cap by purchasing insurance in excess of the cap. However, copies of the relevant insurance policies submitted by Defendants ISD and Poshak belie this argument.
The district court examined the endorsement in the school district's insurance policy and concluded, "The plain terms of the relevant insurance policy provide that Defendant ISD 696 does not have 'valid and collectible' insurance in excess of the $ 1,500,000.00 statutory cap set by Minn. Stat. § 466.04, subd. 1(7)."
Anderson raises an entirely different theory on appeal. She no longer challenges the district court's interpretation of the endorsement in ISD 696's insurance policy. Instead, she challenges the validity of the endorsement. Her argument derives from Frazier v. Bickford , an unpublished order issued by a federal district court. No. 14-cv-3843, 2015 WL 6082734 (D. Minn. Oct. 15, 2015). That order opines that, "when a municipality procures insurance coverage exceeding the statutory liability caps set by Minn. Stat. § 466.04, it waives those caps pursuant to Minn. Stat. § 466.06, even if the insurer attempts to avoid waiver by including a non-waiver provision in its policy." Id . at *4.
ISD 696 and Poshak counter Anderson's argument on appeal by asking us not to consider it because Anderson forfeited the argument by not raising it in the district court. They are correct.
*925 Anderson raised the invalidity argument premised on Frazier for the first time in a letter unsuccessfully seeking the district court's leave to bring a motion to reconsider. A party cannot appeal a district court's decision to deny a motion for reconsideration. Baker v. Amtrak Nat. R.R. Passenger Corp. , 588 N.W.2d 749, 755 (Minn. App. 1999). And a party cannot "obtain review by raising the same general issue litigated below but under a different theory." Thiele v. Stich , 425 N.W.2d 580, 582 (Minn. 1988). Because the argument that the endorsement was invalid was neither raised properly to nor decided by the district court, it is forfeited. See Id . Anderson also fails to present a compelling argument that we should nevertheless review the issue based on the interest-of-justice exception. See Minn. R. App. P. 103.04 (allowing us to review "any other matter as the interest of justice may require"). Anderson presented her memorandum opposing ISD 696's motion to cap liability more than 17 months after the federal court decided Frazier , and, merely citing rule 103.04, she offers no convincing reason why justice requires our considering the theory here.
Anderson does not argue that the district court wrongly interpreted the language of the endorsement as it regards the damages-cap statute. In fact, her argument that the endorsement is invalid under Frazier 's reasoning is premised on the notion that the district court correctly interpreted the endorsement "purporting to maintain the [damages-cap] limitation." We therefore offer no opinion about the district court's analysis and affirm it as uncontested.
DECISION
The district court did not abuse its discretion by allowing Salo to argue apportionment of fault in the Anderson trial notwithstanding her agreement to accept the Foss jury's fault determination because of the narrow scope of the agreement. The district court did not violate Minnesota Statutes, section 546.24, by sending the jury out for further deliberations to correct its inconsistent verdict after the court read the verdict aloud and asked the jury whether the reading accurately reflected its verdict. The district court properly answered the jury's question by not suggesting how the jury should correct its inconsistent verdict. The district court's order conferring party status on the state as an intervenor, which occurred without objection by any named party, cured any rule-based deficiency that might otherwise have affected the state's standing or the court's jurisdiction over the issues for which the state's involvement might have mattered. Because Anderson's contention that the district court erred by limiting ISD 696's damages to the statutory maximum under Minnesota Statutes, section 466.04, rests on a legal theory that Anderson did not raise and the district court did not decide, we do not address the merits of the contention.
Affirmed .